CECILIA SLAVIN, as Administratrix, etc., of HARRY SLAVIN, Deceased, Respondent, Appellant, v. THE STATE OF NEW YORK, Appellant, Respondent.

(Claim No. 23527.)

Third Department, November 20, 1936.

*McKennell & Goody [Frank J. Ryan* of counsel; *Thomas A. McKennell, Aaron Goody* and *Louis Goldfarb* with him on the brief], for the claimant, respondent, appellant.

*John J. Bennett, Jr., Attorney-General [Leon M. Layden* and *Paul Muscarella, Assistant Attorneys-General* with him on the brief, of counsel], for the defendant, appellant, respondent.

BLISS, J. The claimant's intestate was killed at seven-thirty P. M. on February 10, 1933, by a police officer of the city of New Rochelle as he and Theodore Cohen, both salesmen returning from a business trip to New England, were about to enter Cohen's automobile which bore New York license No. 8K 3261. According to Cohen, whose version of the killing was adopted by the Court of Claims, Slavin and Cohen were just getting into the automobile when two men in plain clothes approached them, one with a drawn revolver in his hand, and said to them: " Stick them up." Slavin suddenly turned and ran and was pursued and caught by one of these men, who were really officers of the New Rochelle police force in plain clothes. A third officer in plain clothes, Sergeant Blume, ran from the opposite side of the street to where Slavin and one of the plain clothesmen were scuffling and shot Slavin in the back of Slavin's head and he died as a result of the wound less than an hour later. None of the officers exhibited a shield or other badge and at no time did they advise either Cohen or Slavin that they were officers of the law.

The three New Rochelle plain clothesmen were attempting to arrest Slavin and Cohen for a payroll holdup which had been committed in Hartford, Conn., at about three P. M. on February ninth. The police department of Hartford had sent a message to the New York State police that the occupants of a Dodge sedan bearing New York registration No. 8K 3261 were wanted for a payroll holdup and that one of these men was armed. This message was received at State police headquarters, Albany, at four-five o'clock P. M. on February ninth and, together with added information obtained from the State Motor Vehicle Bureau, was transmitted from the Albany headquarters over the State police teletype system to the barracks of Troop K at Hawthorne, Westchester county. From Hawthorne the message was relayed by teletype to State

police stations in that section and by telephone to police headquarters at White Plains whence it was transmitted over the Westchester county teletype system to the various police departments of the municipalities in that county, including the police department in the city of New Rochelle.

At one-five A. M. on February 10, 1933, a cancellation of this message was received by Troop K barracks at Hawthorne. The State trooper in charge communicated this cancellation by teletype to the various State police stations on his circuit within an hour and three minutes after its receipt by him, but he forgot to telephone it to the police headquarters at White Plains for transmission to the various police departments in Westchester county, including New Rochelle. The message of cancellation stated that license 8K 3261 was a wrong number and that the men who had committed the Hartford holdup had been arrested. The officers who participated in the attempted arrest of Slavin knew of the receipt of the first message at the New Rochelle police headquarters but of course had no knowledge of the cancellation. The attempted arrest of Slavin and Cohen, which resulted in Slavin's death, took place some eighteen hours after the receipt of this cancellation message by Troop K barracks at Hawthorne.

The Court of Claims has found that the failure of the State police to transmit the cancellation message to the police headquarters at White Plains so that it could be transmitted over the teletype system in Westchester county to the various police departments in that county, including New Rochelle, was negligence and the proximate cause of the death of claimant's intestate. The State appeals on the ground that such failure to cancel the alarm was not actionable negligence and that even though the State's conduct was negligent it was not the proximate cause of the death of Harry Slavin. In support of this contention it urges that the trooper who failed to relay the cancellation message could not reasonably have anticipated that the persons wanted for the Hartford crime (1) would be in New Rochelle at the particular time in question; (2) if they happened to be there that they should be seen by police officers; (3) if seen that they would attempt to escape while being placed under arrest, and (4) the particular events, including the shooting, which actually occurred. It also urges that there was not an unbroken chain of causation between its omission and the death of Slavin. Particular stress is laid upon the contention that Slavin's death was an accident, caused solely by his own unexpected refusal to submit to arrest and attempt to run away.

The State trooper who received the cancellation message and failed to use reasonable care to relay it to the same authorities who had received the first notice of the crime, was negligent. (Restatement of the Law of Torts, Negligence, § 321.) But should he have anticipated that the persons sought by the police might be harmed by such failure? The entire strength of the State and local police forces in Westchester county, which adjoins Connecticut, had been set in motion and directed against the occupants of the automobile bearing New York license No. 8K 3261. The object of this force was the apprehension of the supposedly armed highwaymen. The very fact that the original message was sent to the State police barracks at Hawthorne and thence throughout Westchester county shows that the State's officers expected that the fugitives might be in that locality at or about that time. Each police officer in that county became immediately charged with the duty of watching for and capturing these supposed criminals. The use of extreme force might be necessary and these officers were warned that the criminals were armed. Methods of apprehension commensurate with the crime and the character of the criminals were to be expected. Dangerous and desperate men would require strong means. It was reasonably to be anticipated in view of the seriousness of the alleged crime and the nature of the warning sent out that harm might result to the occupants of this particular automobile. The State trooper, after he received the cancellation message, knew that the objects of the search were wrongfully suspected of the crime and innocent and he should have known that they would act accordingly. Under these circumstances we may not say that a clash between the officers of the law and the occupants of this car was entirely unexpected.

The State urges that it could not reasonably have foreseen that the arrest would be attempted by officers in plain clothes and that such officers would not apprise the occupants of the car of the fact that they were officers of the law. It is the State's contention, although the Court of Claims has found against it in this respect, that they did tell Slavin and Cohen that they were policemen. Arrests by officers in plain clothes are every day occurrences. Drivers of automobiles are prone to drive on when hailed by strangers. It might well have been anticipated that harm in some form would come to these innocent men. " It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye." (*Munsey* v. *Webb*, 231 U. S. 150, 156; *Washington & Georgetown Railroad Co.* v. *Hickey*, 166 id. 521.) " The risk reasonably to be perceived defines the

duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension. * * * This does not mean, of course, that one who launches a destructive force is always relieved of liability if the force, though known to be destructive, pursues an unexpected path. * * * We may assume, without deciding, that negligence, not at large or in the abstract, but in relation to the plaintiff, would entail liability for any and all consequences, however novel or extraordinary." (*Palsgraf* v. *Long Island Railroad Co.*, 248 N. Y. 339, at pp. 344, 346.) Our own court has written in *Daly* v. *State of New York* (226 App. Div. 154): " The exercise of ordinary care requires precaution as well against the extraordinary as against the ordinary. It is only the unforeseeable in the exercise of ordinary care, or the act of God, that exculpates the negligent wrongdoer." One is presumed to know that human beings will act as such. (Restatement of the Law of Torts, Negligence, § 290.) Foreseeability as to the particular manner in which the harm will manifest itself is not essential to liability. (*Hogan* v. *Comac Sales, Inc.*, 245 App. Div. 216; affd. without opinion, 271 N. Y. 562.)

We see here no independent intervening cause between the negligence of the State trooper and the death of Harry Slavin. The flow from cause to effect is uninterrupted and the liability of the State is apparent.

The damages awarded below were $25,0C0. The claimant here contends that this amount is inadequate. Decedent was thirty-eight years of age, in good health, had worked steadily as a clothing salesman since his marriage in 1920, except for a period of about four months when he was out of employment, and his regular average earnings amounted to about $3,400 per year, and in addition he made some extra money, the exact amount of which is not definitely shown. He left him surviving a widow thirty-three years of age and three children, aged twelve, nine and two years respectively.

The administratrix attempts to capitalize the earnings upon a basis of life expectancy and urges an award accordingly. While the pecuniary loss to these beneficiaries was substantial indeed, nevertheless the award is correspondingly substantial and we do not feel that we should disturb the findings of the trial court in this regard.

The judgment below should be affirmed.

HILL, P. J., RHODES, McNAMEE and CRAPSER, JJ., concur.

Judgment affirmed, with costs to the claimant.