AGNES FOLEY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25961.)

HARRY A. FOLEY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25962.)

EUGENE F. FOLEY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25963.)

HARRY A. FOLEY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25964.)

AUDREY COPELAND FOLEY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25965.)

JANET FOLEY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25966.)

WILLIAM E. FOLEY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25967.)

Court of Claims, November 10, 1941.

*Samuel Sapowitch* [*Ernest S. Carnes* of counsel], for the claimants.

*John J. Bennett, Jr., Attorney-General* [*John M. Dooley, Assistant Attorney-General,* of counsel], for the defendant.

RYAN, J. By chapter 910 of the Laws of 1936, effective September 1, 1936,* the Legislature created the State Traffic Commission. (Vehicle and Traffic Law, art. 7, § 95 *et seq.*) The Commission proceeded to take over control of traffic signals on State highways outside of cities, among them those in the town of Amherst, Erie county, N. Y.

We have already had occasion to observe that if the operation of such signal lights is a police or governmental function it is one for which the State has waived its immunity from liability for the negligence of its officers and employees in discharging their duties in respect to it under the provisions of section 8 (formerly § 12-a) of the Court of Claims Act. (*Dulinak* v. *State of New York,*

---

* Amd. by Laws of 1941, chap. 792.—[REP.

177 Misc. 368; *Zukowski* v. *State of New York*, Id. 368; *Mazikowski* v. *State of New York*, Id. 338; affd., 232 App. Div. 1064.) Although under such authority the town of Amherst and other towns of the State would not have been liable for negligence in the maintenance of the traffic control signal lights (*Cleveland* v. *Town of Lancaster*, 239 App. Div. 263; affd., 264 N. Y. 568; *Murphy* v. *Incorporated Village of Farmingdale*, 252 App. Div. 327; *Parsons* v. *City of New York*, 248 id. 825; affd., 273 N. Y. 547), the State of New York is liable because of the provision in the Court of Claims Act which on equally well-settled authority has waived the liability of the State for negligence in the discharging of a police function. (*Slavin* v. *State of New York*, 249 App. Div. 72; *Egan* v. *State of New York*, 255 id. 825; *Finnegan* v. *State of New York*, Id. 825; *McArdle* v. *State of New York*, 251 id. 773; motion for reargument denied, 252 id. 706; motion to appeal denied by Court of Appeals, 276 N. Y. 690.)

Among the traffic control signal lights which the State of New York took over in the town of Amherst was one located at the intersection of Wehrle drive, a county highway, and Route 18-B, or Union road, a State highway. Wehrle drive runs east and west and Union road runs north and south.

On Saturday, August 3, 1940, between two and two-thirty P. M. the red light which faced north-bound traffic on Union road was not working. It was not working between twelve midnight Saturday and one o'clock Sunday morning when the witness McCready and his wife went north on Union road. It was not working between two-forty-five and three A. M. on Sunday morning, August fourth. It was not working between eight-thirty and nine A. M. on Sunday morning, August fourth, but had been working at about eight-thirty A. M. on Saturday, August third. It may not have been working shortly after nine o'clock in the forenoon of August third, when the witness McCready saw a north-bound truck drive through the light when he was going west on Wehrle drive. It was not working a few minutes after eleven o'clock on Sunday morning when the police officers, summoned to the scene of the accident with which we are concerned, examined it.

On all of these occasions only the red light for north-bound traffic on Union road failed to function. The green light for north-bound traffic was working, the red and green lights for south-bound traffic on Union road were working, and the red and green lights for both east- and west-bound traffic on Wehrle drive were working. The failure of the one red light to turn on was due to the fact that one bulb had burned out. There was no mechanical defect in the operation of the signal. No testimony was offered

to show actual notice to the State of New York that the bulb had burned out or that the light was not working. The chief of police of the town of Amherst testified that he had police patroling the highway and that it was their duty to examine the lights to see if they were operating properly and, if not, to report it to the State of New York. He said he could not say if any policeman of the town of Amherst was patrolling the intersection in question the night before the accident. He did not say that he or his subordinates had any knowledge that the light was out or had reported any such information to the State authorities. Upon the argument at the conclusion of the trial, counsel for claimants substantially admitted that there was no proof of actual notice.

The case differs from the *Dulinak* case (*supra*) in several respects. (1) In the *Dulinak* case there was a mechanical defect in the signal apparatus. (2) It had existed from May 1, 1937, to the date of the accident, July 4, 1937. (3) The State employees, with knowledge that the apparatus was out of repair, made no reasonable effort to repair it. (4) The *Dulinak* accident occurred at two o'clock in the morning.

As it is undisputed that the red light facing north-bound traffic on Union road was not working from two P. M. Saturday afternoon, August third, to eleven A. M. Sunday, August fourth, should it be said that there was constructive notice to the State that it was out of order? We have no doubt that this question must be answered affirmatively. The clear intendment of the statute creating the State Traffic Commission and defining its powers and duties is that the Commission should not only determine the type and location of traffic control signals on State highways but should have the duty of maintaining them. As the ever-extending arm of paternalism spreads new benefactions upon its citizens it gathers new responsibilities and places them upon the shoulders of the State. It is not sufficient to install an electrically-operated device, however well and durably made, at a busy intersection and leave it forever unattended. Mechanical contrivances fail and filaments burn out. It can hardly be said that the State Traffic Commission met its duty in this regard by relying on the police patrolmen of the town of Amherst. Responsibility for the life and limb of countless travelers on the public highways should not be delegated to men not directly accountable to the State of New York though they be peace officers of the locality. It is no reflection on the conduct of the Amherst policemen to say that the State's duty to maintain the signal light required it to have the same checked systematically and with greater frequency than once in twenty-one hours. There is no proof in the record that any State employee,

had examined the signal even once daily, nor, indeed, had ever examined it from the moment it was installed three or four years prior to the accident. It must be said, therefore, that the State of New York had constructive notice that the light had failed and was negligent in its duty of maintenance. If this neglect and omission of duty resulted in injury to travelers on the highway then the State of New York must respond to them in damages. (Ct. of Claims Act, §§ 8, 9, subd. 3.)

This brings us to the more difficult question of proximate cause and to the question of contributory negligence of driver and guests and in the consideration of these it becomes necessary to review the details of the accident which is the subject of litigation. All witnesses are in substantial accord as to what happened. In the bright sunshine of Sunday morning, August 4, 1940, the family of Eugene F. Foley, of Buffalo, set out from that city in an automobile for a trip to Geneseo to visit friends. Mr. Foley did not go. The automobile was owned by his son, William E. Foley, who sat in the front seat beside the driver, Audrey Copeland, who a few days later became William's wife. The rear seat was occupied by Eugene Foley's wife, Agnes, at the right, and by his son, Harry A., and by his son's wife, Janet. They proceeded in an easterly direction along Wehrle drive and at about eleven o'clock approached the intersection of Route 18-B, or Union road, at a speed of between thirty and thirty-five miles per hour. The driver, Audrey Copeland, testified that she observed that the signal light facing her was red and slackened her speed to about twenty to twenty-five miles per hour; that the light changed from red to green when she was between 150 and 200 feet from the intersection, whereupon she "accelerated to about 30 or 35 as we were before." When the Foley car was 200 feet from the intersection and when the signal light facing her was still red, its driver, Audrey Copeland, saw a Ford automobile at her right on Union road. There were no buildings nor anything to obstruct her view of it. The Ford was likewise at about 200 feet from the intersection, or a little more, was traveling faster than the Foley car and was approaching the intersection at a speed of forty-five to fifty miles per hour. Audrey was then driving at a speed of about twenty-five miles per hour. When the light facing her changed to green she accelerated, looked in front of her to see if there was any other traffic, looked from left to right and proceeded into the intersection. She testified she did not see the Ford again until she was in the intersection and it was fifteen or twenty feet distant. The Ford hit the Foley car under the suspended signal light or at about the center of the intersection and, when the police officers arrived, they found the two

automobiles tipped over on the north side of Wehrle drive east of Union road.

The claimants say that the green light invited Audrey to proceed into the intersection. They invoke the language of the statute, which reads, " Red shall mean that traffic shall stop and remain standing. Green shall mean that traffic shall move." (Vehicle and Traffic Law, § 84.) They assert that this was more than an invitation, that it was a command. But the courts have otherwise interpreted this statute. (*Shea* v. *Judson*, 283 N. Y. 393; *Ferraro* v. *Garden City Park Fire Commissioners*, 259 App. Div. 121.) When Audrey saw the Ford car approaching the intersection at the speed to which she testified and only 200 feet away she was not authorized to proceed blindly on the green light but was bound to exercise such care as was required of an ordinarily prudent driver under the circumstances. We are convinced that this she did not do and we find her guilty of contributory negligence, which is imputable to William E. Foley, the owner of the automobile which Audrey was driving. (*Gochee* v. *Wagner*, 257 N. Y. 344. Also following claims against the State of New York: *Osterhout* v. *State of New York*, Claim No. 24943; *Horton* v. *State of New York*, Claim No. 25397; *Taylor* v. *State of New York*, Claim No. 25618 [not reported officially].) This finding bars recovery on the part of these two claimants.

Of the three guests on the rear seat only Harry A. Foley testified that he saw the Ford. Janet testified that she did not see it at any time before the crash and Agnes testified that she knew there was a car approaching but did not pay any attention to it. We believe that each of them had the right to rely on the driver of his or her own vehicle and we cannot say that any of them has failed to establish his or her own freedom from contributory negligence.

We have no jurisdiction of the driver of the Ford and cannot determine, as between the parties involved, the issue of her negligence. We do not even have the benefit of her testimony nor of that of her guests as none of them was called as a witness. However, it is necessary to a determination of these claims that we consider her actions. As it is undisputed that the only defect in the operation of the traffic signal was that the red light facing north-bound traffic did not turn on, and there being no intermediate amber or caution light, it is evident that the driver of the Ford had a green signal in her favor until that moment when the light facing Audrey Copeland turned green. But at that moment the Ford's driver must have been faced with two blank or non-illuminated signals. In the *Dulinak* case the driver of the automobile saw the red light, which had been against him, go out and, seeing no

illumination of the green light, proceeded into the intersection. We held, in effect, that he had the right to assume that the green light was dead and that he could proceed with safety. Here the Ford's driver must have seen the green light in her favor go out. She saw no red light turn on but the flashing out of the green light was a warning to her that the traffic direction was about to change. She was then 200 feet from the intersection. Moreover, her view of the Foley car must have been as open and unobstructed as Audrey Copeland's view of the Ford. It was broad daylight, eleven o'clock on a bright August morning. Yet she did not stop her automobile or bring it under control so as to avoid collision.

Upon careful consideration of the conduct of the principal actors under the existing conditions, can it be said that the State's omission of duty in respect to the traffic control signal proximately caused the injuries to the members of the Foley family? To make such a finding requires a determination that such omission actively and continuously operated to bring about harm to them even though the conduct of the Ford's driver simultaneously and substantially contributed to that harm. (2 Restatement, Torts [Negligence], § 439.) If, as we have seen, the driver of the Foley car could not with impunity disregard the presence of the Ford, even in the face of a green light, and proceed blindly into the intersection (*Shea* v. *Judson, supra*), certainly the driver of the Ford car was not authorized wholly to disregard the presence of the other automobile and proceed, after the green light, which had theretofore faced her, was extinguished. While, as we have pointed out, the Ford's driver is not party to this litigation, we are obliged to pass upon her conduct because it affects the rights of the claimants here and of the State of New York. We must say, therefore, upon the record before us, that her actions were negligent and reckless to an extent which, in our opinion, indicates what our decision must be.

Considering all of the circumstances related in the testimony, we hesitate to say, as a matter of law or of fact, that the failure of the red light to illuminate initiated a chain of events which resulted in injury to these claimants. (2 Restatement, Torts [Negligence], § 453.) But if it did we are convinced that the flow from cause to effect was interrupted by intervening forces which we have hereinabove detailed. These forces operated to relieve the State from liability herein.

Enter decisions in accordance with this opinion.