SHIRLEY KINNEY, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27245.)

JUNE MENDY, an Infant, by ETHEL MENDY, Her Guardian ad Litem, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27246.)

ETHEL MENDY, as Administratrix of the Estate of STEVE MENDY, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27247.)

ETHEL MENDY, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27248.)

Court of Claims, December 18, 1947.

*George E. Phillies* for claimants.

*Nathaniel L. Goldstein, Attorney-General* (*Arthur W. Mattson* and *James G. Austin* of counsel), for defendant.

LOUNSBERRY, J. In the town of Amherst, near Buffalo, exists the intersection of Union Road, a two-lane State highway running north and south, and Wehrle Drive, a three-lane county road running east and west. On August 4, 1940, slightly before 11 o'clock in the morning, a car operated by Ethel Mendy, proceeding northerly along the Union Road, collided at this intersection with a car operated by Audrey Copeland Foley, which was proceeding easterly along Wehrle Drive. This action

for damages is brought by the occupants and the owner of the Mendy car against the State of New York on the ground that the accident resulted from the defective maintenance of a traffic signal at the intersection.

Previously the occupants of the Foley car brought action against the State of New York on the same ground. It appeared in that case that, at the time of the accident and for a considerable period previously, traffic at this intersection was controlled by a standard traffic signal maintained by the State of New York. This signal was an electrically illuminated device equipped with red and green lights so arranged that when the red lenses were lighted in the north and south directions, the green lenses were lighted in the east and west directions and *vice versa*. The full cycle from green through red, through green and back to red again, in any given direction, was completed in forty-five seconds. At the time of the accident, however, the bulb lighting the red lens which faced south on Union Road, the direction from which the Mendy car was approaching, was not working, and it had not been working for at least twenty-one hours prior to that time. The result was that when traffic on Wehrle Drive had a green signal, the north-bound traffic on Union Road had a blank signal instead of a red signal as normally would have been the case.

On the first trial of the *Foley* action, this court held that the State was negligent in the maintenance of the traffic signal, but dismissed the claims on the ground that the intervening negligence of the drivers rather than the defective condition of the light was the proximate cause of the accident. (*Foley* v. *State of New York,* 177 Misc. 443 [1941].)

Upon appeal, the Appellate Division ordered a new trial, stating " If the failure of the red light contributed in any degree to the happening of the accident, then the chain of causation remained unbroken. We have already observed that when the green light signaled the driver of the Foley car to proceed she relied upon a red light, which in fact was not there, to warn north-bound traffic to stop. It is reasonable to assume further that if the red light facing north-bound traffic had been working Mrs. Mendy would have obeyed the law and brought her car to a stop, in which event there would have been no accident. It is apparent that the absence of the red light not only contributed to the accident that happened, but that it was reasonably foreseeable that some such accident would occur under the situation which was allowed to exist. The mere fact that the acts of the drivers of the cars intervened does not

necessarily create a superseding cause, and this is particularly so where the original wrongdoer could have anticipated that the intervening acts might naturally follow the original wrongful act. (1 Shearman & Redfield on the Law of Negligence [Rev. ed.], § 38; Restatement, Law of Torts, §§ 447, 449, 452; *Carlock* v. *Westchester Lighting Co.*, 268 N. Y. 345.) The mere fact that the State's negligence alone was not enough to produce the injury without the co-operation of the drivers of the cars, does not break the chain of causation or relieve the State from liability. (*DeHaen* v. *Rockwood Sprinkler Co.*, 258 N. Y. 350.) If the accident here was a natural and probable sequence of the original negligence of the State, then there is no superseding cause, and the State remains liable notwithstanding that the negligence of one of the drivers may also have contributed in some manner to the happening of the accident. (*Lowery* v. *Manhattan R. Co.*, 99 N. Y. 158, 162; *Donnelly* v. *Piercy Contracting Co.*, 222 N. Y. 210; *Carlock* v. *Westchester Lighting Co., supra.*) It seems clear that the absence of the red light started a chain of events which culminated in this accident. The acts of the drivers whether negligent or not were concurring causes and the failure of the red light still remained one of the proximate causes. We are therefore of the opinion that the court below was in error in concluding that the acts of the drivers of the cars involved were superseding acts of negligence sufficient to relieve the State from liability.'' (*Foley* v. *State of New York*, 265 App. Div. 682, 686–688.)

Upon the second trial, we found no new evidence which would relieve the State from the original finding of negligence in the maintenance of the traffic signal, and, therefore, on the basis of the above holding of the Appellate Division, awards were made to all of the claimants. These awards were upheld upon a second appeal to the Appellate Division (267 App. Div. 1036) and upon an appeal to the Court of Appeals (294 N. Y. 275).

In view of the decisions in the *Foley* case (*supra*), we consider it definitely settled that the State was negligent in the maintenance of the traffic signal, and that such negligence was the proximate cause of the accident. The State has argued that the *Foley* decision is not *res judicata* in the present case, since the present claimants were not parties to the *Foley* action, but with this contention we cannot agree. The State was a party to the *Foley* action and is bound by the former determination as to the maintenance of the light and as to the matter of proximate cause. (*Matter of New York State Labor Relations Board* v. *Holland Laundry*, 294 N. Y. 480.) Indeed, no

other conclusion is logically possible, since if this court were now to reopen these issues and decide them adversely to the present claimants, such a decision would certainly be reversed on the basis of the *Foley* cases. Therefore, the only issue presented in the present claims is whether any of the claimants, and particularly the driver, Ethel Mendy, was guilty of such contributory negligence as would bar a recovery.

The testimony shows that a driver proceeding northerly on Union Road could first observe the traffic signal from the point of intersection of Union Road and Cleveland Drive, a highway running parallel with and south of Wehrle Drive. From this point, which is 1,744 feet distant from the traffic signal, Union Road runs slightly downhill and curves somewhat to the left as it reaches Wehrle Drive. There is no substantial obstruction of the view of Wehrle Drive as one travels this course.

The claimant, Ethel Mendy, was driving a car owned by her husband, Steve Mendy, whose administratrix is a claimant herein. With her in the front seat were her two-year old daughter, June Mendy, and her cousin, Shirley Kinney, then aged seventeen years, both of whom are claimants herein. They were on their way to church at Williamsville. The day was bright, clear and sunny; the time slightly before 11 o'clock in the morning. It is the contention of the claimants that during the whole distance from Cleveland Drive to Wehrle Drive, the light appeared to be continuously green and that they proceeded on the assumption that they had the right of way at the intersection. They attribute the lighted appearance of the green lens to the reflection of sunlight on a bright day.

Mrs. Mendy testified that she was proceeding around thirty-five miles per hour when she crossed the Cleveland Drive intersection; that she noticed at that time that the traffic signal at the Wehrle Drive intersection was green; that she proceeded at the same rate of speed, glancing at the light four or five times and noting each time that it was apparently still green; that she also noticed the Foley car proceeding easterly on Wehrle Drive at about the same speed as her car and at about the same relative distance from the traffic signal; that after passing a marshy area on the left, where reeds may have obscured the visibility somewhat, she again noticed the Foley car, both cars at this point being between fifty and seventy-five feet from the intersection; that she saw the Foley car slow down and also slowed down herself; that she then noted that she apparently still had a green light and therefore accelerated her speed somewhat, proceeded into the intersection, discovered the Foley

car also coming into the intersection a few feet from her, swerved sharply to the left attempting to avoid a collision, but nevertheless did strike the Foley car on its right side. She insisted that at all times the light appeared to be green and that at no time did it appear to be blank. The red light, of course, was not working, unknown to her.

Miss Kinney generally corroborated the testimony of Mrs. Mendy as to the speed of the cars, their relative distances from the intersection and the weather conditions. She testified that she first noticed the signal at a point about midway between the two intersections; that she noticed that the light was green and commented to Mrs. Mendy on their good luck in encountering green lights that morning; that she looked at it several times and each time it appeared to be green; that she noticed the Foley car slow down, glanced at the light and remarked to Mrs. Mendy that she had the green light and could proceed. Miss Kinney was accustomed to the type of traffic signal which also contained an amber lens and continued to watch the light, expecting it to turn to amber, but it continued to appear to be green.

Lillian G. Willits testified that about an hour before the accident she drove the same route, noticed as she crossed the Cleveland Drive intersection that the Wehrle Drive traffic signal was green, slowed down, expecting it to change to red and then back to green, but that it remained continuously green, and that she traveled the entire distance through the Wehrle Drive intersection on what appeared to be a continuous green light.

Paul T. Morris, the first police officer to reach the scene of the accident, discovered that the red light facing south was not functioning and then tested the situation by driving along Union Road from the Cleveland Drive intersection to the Wehrle Drive intersection, observing the traffic signal; and that he observed that the green lens appeared to be lighted even when the bulb behind it was actually out.

The testimony in the *Foley* case, a considerable portion of which was offered in evidence, generally accords with the testimony in the present case, so far as the relative speeds and distances of the two cars from the traffic signal are concerned. It shows that the light facing westerly on Wehrle Drive changed from red to green as the Foley car neared the intersection and that the Foley car thereupon proceeded into the intersection.

The State produced expert testimony designed to show that at 11 o'clock in the morning the direct rays of the sun could not possibly have struck the lenses of the traffic signal, because

of the hoods over such lenses; that reflected light from other surfaces could not have caused the green lens to appear to be lighted when the bulb behind it was not lighted; and that in any event the properties of red and green lenses are such that the reflection from an unlighted red lens would be more noticeable than the reflection from an unlighted green lens.

The State further contends that Mrs. Mendy, being familiar with the route, knew or ought to have known that in the space of time necessary to travel the distance from Cleveland Drive to Wehrle Drive the light never remained continuously green; that if it did appear to be continuously green she should have realized that something was wrong with the signal and should not have depended on it; and that in any event she was under a duty to observe great care at any intersection regardless of traffic signals, and that she failed to use such care when she accelerated her car into the intersection in disregard of the oncoming Foley car simply because she thought she had the green light.

After weighing the whole matter, we have concluded that the claimants are entitled to judgment. Four witnesses, two of them wholly disinterested, testified that the light appeared to be green at all times. In the face of such testimony, we are unable to give much weight to the testimony of the expert who, however great his professional training and achievement, never actually made tests or observations of the effect of sunlight, whether direct or reflected, on traffic signals under these or any other conditions. Furthermore, we are of the opinion that his statement that reflected light would tend to light up the red lens more than the green lens is contrary to the common observation and experience of drivers.

So far as Mrs. Mendy's negligence in entering the intersection is concerned, we must remark that the conduct of both drivers in that respect has already occasioned both this and higher courts some difficulty. In the *Foley* case, as we have already seen, both the Appellate Division and the Court of Appeals concluded that the defective maintenance of the light signal was the proximate cause of the accident, and that the driver of the Foley car was not negligent, or at least that her intervening acts, whether negligent or not, did not constitute a superseding cause of the accident. We believe that this conclusion applies equally to Mrs. Mendy. To her and to her passenger, Miss Kinney, the light appeared to be green. Both assumed that the Foley car was slowing down for a red light, and that therefore the Mendy car might safely proceed. Both

of them observed both the light and the traffic conditions. Under the circumstances, Mrs. Mendy's conduct was little different from, and certainly no more to be criticized than, that of Mrs. Foley. Indeed, Mrs. Mendy seems to have been a bit the more alert. She did swerve her car sharply in an effort to avoid a collision, while Mrs. Foley apparently made no effort whatever to avoid the Mendy car. We conclude, therefore, that the conduct of Mrs. Mendy under these circumstances would no more constitute a superseding cause of the accident than would the conduct of Mrs. Foley.

We also feel that the State has endeavored to hold Mrs. Mendy to a standard of conduct higher than that reasonably to be expected of an average driver. It is conceivable that an extraordinarily prudent and experienced driver might have noted the abnormal duration of the green light, engaged in some rapid calculations, concluded that the red light must be out of order, and deduced that the Foley car actually had the green light. It is not likely that an average driver would have done so, and the proper test is what an average driver would have done under the circumstances. (*Petrozak* v. *State of New York*, 189 Misc. 809.)

Incidentally, even if Mrs. Mendy had discovered that the light was actually blank, her subsequent behavior would not necessarily have constituted negligence. In such a case, she might logically have assumed that the entire light was not operating at all. In that case, she would have had the right of way, since she was then to the right of the Foley car. (Vehicle and Traffic Law, § 82, subd. 4.)

We find no evidence that the passenger, Shirley Kinney, was guilty of any negligence. She was in fact an unusually alert passenger, but was deceived by the same circumstances which deceived Mrs. Mendy. No negligence, of course, can be imputed to the two-year old passenger, June Mendy. (Domestic Relations Law, § 73.) Likewise, no negligence can be imputed to the owner of the car, Steve Mendy. (*Mills* v. *Gabriel*, 259 App. Div. 60.)

The State and the claimants have already agreed upon and stipulated the amounts of damages to be awarded each claimant, and therefore, it is not necessary to consider this aspect of the case.