ALFRED PAGLIA, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 29407.)

Court of Claims, September 29, 1950.

*James R. Skahen* and *Domenic A. Mazza* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Joseph A. Drago* of counsel), for defendant.

LOUNSBERRY, P. J.   Section 11 of the Vehicle and Traffic Law, which deals generally with the registration of motor vehicles, provides at subdivision 1, that an application for registration '' shall contain or be accompanied by such evidence of the ownership of the motor vehicle described in the application as may be required by the commissioner or his agent.'' The Regulations for Dealers and Transporters, issued by the Commissioner of Motor Vehicles, provide that upon the sale of the vehicle by a dealer he shall issue to the purchaser a certificate of sale on form MV 50. While neither the statute nor said regulations specifically so provide, it is apparent that such certificate of sale constitutes the evidence of ownership required by the com-

missioner where one who has purchased a motor vehicle from a dealer makes application for the registration thereof.

The regulations provide with some particularity for the safeguarding of such certificates. The blank forms are issued to the dealers in triplicate and each bears a serial number. The original may not be signed in advance and must be issued only to the actual purchaser. The duplicate must be forwarded at once to the district office of the Bureau of Motor Vehicles, and the triplicate must be preserved for three years. Certificates must be issued in consecutive order and the dealer is held strictly accountable for all blank certificate forms which have been issued to him.

On July 29, 1948, the Buffalo office of the Bureau of Motor Vehicles received a report that three blank certificates of sale forms, including certificate No. B774195, had been stolen from a dealer in Batavia, New York. The Buffalo office immediately transmitted this information to the main office at Albany. On August 11, 1948, and again on August 31, September 30 and October 22, 1948, bulletins were issued by the Albany office, intended for all offices which issued registrations, advising of the theft of such certificates, stating their numbers, and requesting such offices to withhold any of said certificates if presented and to notify the local police authority. The bulletin of August 11 was definitely received by and posted in the Cayuga County Clerk's Office at Auburn, New York. The others probably were, also.

On November 4, 1948, one Ralph Rocco presented himself at the Cayuga County Clerk's Office in Auburn, armed with an application for registration and a certificate of sale, form MV 50, purporting to certify the sale to him by Owego Motors of a certain Oldsmobile automobile. The certificate bore the above-mentioned serial No. B774195, printed prominently at the upper right-hand corner. The clerk who handled the application failed to notice this fact and did not check the number against the aforesaid bulletins. She also failed to notice that the dealer's number appearing on the certificate, namely 16–32, was unusual since it was the practice of the Bureau of Motor Vehicles to assign to each dealer in the Syracuse district, in which Owego Motors was located, a dealer's certificate number beginning with the letters SN or SU. She proceeded to issue to Mr. Rocco a registration and license plates for the car described in the certificate.

Mr. Rocco, having thus obtained the registration and license plates, then set out to acquire the automobile. This he accom-

plished on the morning of November 8 by removing the same from a parking lot in Ithaca. It in fact belonged to one Richard Ahart of Candor, New York, who had purchased it from Owego Motors.

Mr. Rocco then hastened to Syracuse, a distance of some fifty miles, and offered the automobile for sale to Alfred Paglia, the claimant herein, a dealer in cars. He presented the registration which he had secured from the Cayuga County Clerk, and Mr. Paglia found upon investigation that the serial and motor numbers corresponded properly with those stated in the registration. For the purpose of checking for liens against the prior owner, Mr. Paglia then telephoned the Cayuga County Clerk's Office and inquired who had transferred the automobile to Mr. Rocco, but that office declined to give such information by telephone. He then telephoned a private investigation concern at Auburn and learned from them that there were no liens against the automobile although he did not at that time learn the name of the previous owner. Being satisfied from the registration that Mr. Rocco was the owner of the automobile and that at least there were no encumbrances in his name, the claimant thereupon purchased the automobile for $2,450 and issued his check in such amount.

Shortly afterward on the same day, the claimant began negotiating the sale of the automobile to another dealer, and at the request of such dealer, again telephoned the investigating concern at Auburn. This time he learned that the automobile had been transferred by Owego Motors and, upon calling that company, was advised that they had sold the automobile to Mr. Ahart. He then called Mr Ahart, who thus far was ignorant of the theft, and shortly learned that Mr. Ahart's automobile was indeed missing. He immediately attempted to stop payment on the check but found that Mr. Rocco had taken pains to cash it at once.

Mr. Paglia returned the automobile to Mr. Ahart and then brought this action against the State, charging that its negligence in the issuance of the registration was the cause of his loss. The County Clerk and his employees are, of course, agents of the State for the purpose of issuance of motor vehicle registrations, pursuant to section 50 of the Vehicle and Traffic Law. Specifically, he charges negligence in failing to check the serial number of the certificate against the list of stolen certificate numbers, in accepting a certificate which was irregular on its face, in failing to give him by telephone the requested information concerning the prior owner, and in failing to forward the

certificate and other registration papers immediately to the Albany office, where the fraud might have been discovered.

We shall dispose of the latter items first. The irregularities on the face of the certificate, namely the unusual dealer's certificate number and the failure to give the complete address of Owego Motors, were not in themselves so arresting as to suggest a defect of title. They gain added significance when coupled with the facts concerning the particular serial number which appeared on the certificate, but standing alone they are not sufficient to charge the clerk with negligence for overlooking or waiving them. The refusal to give information by telephone violated no duty. Section 11 of the Vehicle and Traffic Law provides that the registration book maintained by the County Clerk shall be open to public inspection during reasonable business hours. This afforded the claimant or his agent a right of examination but not a right to demand that the clerk perform the examination and report it by telephone. Finally, there is no proof in the record that the clerk failed to forward the certificate and other registration papers to Albany on November 4th, in violation of section 50 of the Vehicle and Traffic Law which requires this to be done at the close of each day. Claimant has assumed that the papers were still in Auburn November 8th because the investigator made a report concerning them that day. The information could and may have been obtained from the registration book, however, rather than from original papers.

There remains the fact that the registration was issued in the face of published warning that the certificate of sale, relied upon as evidence of ownership, had been stolen. Unquestionably this was a careless act. The question is, was it a violation of any legal duty toward this claimant?

We find nothing in the Vehicle and Traffic Law or elsewhere which can be construed to make the State an insurer or guarantor of titles to motor vehicles by virtue of its issuance of registrations. It is true that a certificate of registration creates a presumption of ownership, but it does not constitute a positive or conclusive determination of title, and the presumption may be rebutted by other evidence. (*McCann* v. *Davison,* 145 App. Div. 522; *Bogorad* v. *Dix,* 176 App. Div. 774; *Ferris* v. *Sterling,* 214 N. Y. 249; 60 C. J. S., Motor Vehicles, § 119.)

On the other hand, to conclude that under no circumstances will any responsibility attach to the State for the issuance of a registration to a person other than the true owner, is in effect to render meaningless the statutory requirement that evidence

of ownership be presented, and to make compliance therewith an empty formality. On such a construction, the State could with impunity issue registrations on no evidence, or obviously fictitious evidence, of title. We do not believe the statute to be so completely ineffective. The reasonable construction, we believe, is that the State has assumed the responsibility of requiring some evidence of title as a prerequisite to the issuance of a registration, and having assumed such responsibility, is under a duty to discharge the same with a reasonable degree of care. This is in accord with the principle that one who undertakes to do an act, even though under no duty to do so, must then perform it in a careful and prudent manner. (*Glanzer* v. *Shepard*, 233 N. Y. 236; *Marks* v. *Nambil Realty Co.*, 245 N. Y. 256; *Slavin* v. *State of New York*, 249 App. Div. 72.)

It may reasonably be assumed that one of the purposes in requiring, and prescribing methods for supplying, evidence of ownership is to prevent the transfer of stolen vehicles. The detailed regulations with respect to the handling and issuance of certificates of sale, form MV 50, seem designed to implement this purpose. So are the periodic bulletins giving warning of stolen certificates. Obviously, however, if the warning may be freely ignored, the effectiveness of the plan is destroyed. The present case is a perfect example.

We do not believe that the State can so behave with impunity. We believe that it must exercise reasonable care in examining and accepting evidence of motor vehicle titles and we hold that it did not do so in this case. We do not hold that the State is an insurer of such titles, or that it is responsible for title defects not appearing on the face of the evidence and of which it has no notice, or for technical or trivial irregularities appearing on the face of the evidence. We do hold that where it has knowledge that the evidence is forged or stolen, it must apply such knowledge and withhold registration. Here the State's agent had the knowledge and failed to apply it. The duty to exercise reasonable care was violated and the State becomes responsible in damages to the party injured thereby.

While arising from a very different situation, the case of *Slavin* v. *State of New York* (249 App. Div. 72, *supra*) is significant. There, Connecticut police informed the New York State Police that the occupants of a certain automobile bearing a certain New York registration number were wanted for a holdup. The State Police transmitted this information to the New Rochelle police. Several hours later the State Police received a cancellation of the message, stating that the registration num-

ber was wrong and that the true criminals had already been arrested. This cancellation the State Police failed to transmit to the New Rochelle police. Eighteen hours after the cancellation notice had been received, the New Rochelle police spotted the car which had been described in the original erroneous notice, and in endeavoring to arrest the occupants, shot and killed one of them. The court held the State liable for its failure to transmit the cancellation notice to the New Rochelle police. This holding is in accord with our conclusion that the State, having assumed to act and having knowledge of a situation which may cause harm to an innocent party, must apply such knowledge to prevent such harm if reasonably possible.

The State urges that the claimant was contributorily negligent in purchasing the car without more careful inquiry as to the source of title. With this we cannot agree. As above stated, a registration certificate is presumptive evidence of ownership and as long as he had no information to the contrary, the claimant was entitled to rely upon the presumption. The certificate was valid and regular on its face and correctly described the automobile. The claimant had no reason to suppose that the State had negligently issued it upon forged and stolen evidence of title.

The claim of the claimant herein has been duly and timely filed, has not been assigned, and has not been submitted to any other officer or tribunal for audit or determination.

With this we reach the final conclusion that the claimant has been injured through the negligent performance of a duty by the State and is entitled to an award of $2,450 for his damage.

Findings of fact and conclusions of law in accordance with the above opinion may be submitted within fifteen days from the date hereof, otherwise this memorandum will be considered the decision herein.

Let judgment be entered accordingly.