MICHAEL ONDARKO v. VILLAGE OF HIBBING
AND OTHERS.
JOHN T. NAUGHTIN AND ANOTHER,
EXECUTORS OF ESTATE OF DELLA COSETTE, APPELLANTS.

96 N. W. (2d) 865.

June 5, 1959—No. 37,385.

*Manthey, Carey, Manthey, O'Leary & Trenti,* for appellants.
*I. R. Galob,* for respondent village of Hibbing.
*Jack Fena* and *Lewis, Hammer, Heaney, Weyl & Halverson,* for respondent Ondarko.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order denying a motion for judgment notwithstanding the verdict for plaintiff and codefendant or for a new trial as to all parties.

The action arose from injuries sustained by plaintiff, Michael Ondarko, as a result of an explosion. He had rented a room from Della Cosette in her home at Hibbing. On June 20, 1955, he went with her to the basement to light a hot-water heater, at which time the explosion occurred and both parties were injured. Mrs. Cosette subsequently died from the injuries and her representatives are defendants here.

It is undisputed that the explosion was caused by an accumulation of propane gas which escaped from a leak in the service line outside of the house and that the gas entered the basement by way of drain tile under the basement floor. The codefendant, village of Hibbing, furnishes liquid propane gas to the residences of the village and has a main line running through the alley at the rear of the Cosette home. No permission is required from the village before a service line is installed. The service line from the rear property line to the Cosette residence was installed by an independent plumber in 1946 at the request and expense of Mrs. Cosette. The tap from the main line was made by the village in 1946 by installing a copper pipe from the main line to the property line, and, at this point, a shutoff valve owned by the village. The location of the valve, in this instance 6 inches below the ground, is recorded by the village but that information is not furnished to the property owner. The valve is actuated by a "key" which is carried on the village service truck. It is the only valve which could have controlled the gas before it reached the leak in the service line.

In the basement of the home are a meter and valve owned and furnished by the village. The purpose of this valve, which is sealed by the village when the gas is turned on, is to turn on and off the gas before it reaches the meter. The village did not inspect the service line prior to turning on the gas in 1946 nor had they inspected it at any time prior to the explosion. The record also shows that the gas is owned by the village until it passes through the meter in the home.

Prior to the explosion the odor of gas was detected in the yard of the Cosette home by various people. This was called to the attention of Mrs. Cosette several times and she indicated that she would notify the gas company, but there is no evidence that this was done.

The jury rendered a verdict in favor of Ondarko and against the estate of Mrs. Cosette in the amount of $18,500 and further found in favor of the village.

On appeal the representatives of the estate raised numerous errors relative to the liability of Mrs. Cosette. We are satisfied from the record here that there is sufficient evidence to sustain a finding that she was negligent in not notifying the village of the gas leak after it had been called to her attention numerous times and at least 6 days before the explosion and that no prejudicial error was committed as to her.

Relative to the liability of the village, the trial court submitted the question of control of the gas in the service line to the jury. The court instructed:

"* * * If you find that the defendant village did not have or exercise or assume control over this service line, then the village would not be liable, or as we might say responsible, for the leak and escape of gas that here occurred, unless it had notice, actual or constructive, of a leak or escape of gas, and because of such notice was required to take steps to have the condition corrected or required or to shut off the gas in the line until the leak was corrected. If, on the other hand, you find that the village had or exercised or assumed control over the service line in question, then it was the duty of the defendant village to use reasonable care with regard to this line for its maintenance commensurate with the dangers involved."

We do not take issue with this instruction, which is consistent with the applicable rules in Fabbrizi v. Village of Hibbing, 242 Minn. 464, 468, 66 N. W. (2d) 7, 9, (involving the same village) in which we stated:

"* * * It may be generally stated that, where a gas company does not install or own the service lines on private property *and exercises no control over them,* it is not responsible for the condition in which they are maintained and is not liable for damages caused by a leak therein of which it does not have notice."

We also stated in that case that where the village had exclusive control of the line (242 Minn. 469, 66 N. W. [2d] 10):

"* * * it owed the corresponding duty of exercising reasonable care to keep it in a proper state of repair so as to prevent the escape of gas, a highly dangerous and destructive product when allowed to get beyond control."

Further, we emphasized there that the installation or ownership of the service line was not the significant factor in determining the duty owed by the village but rather that it was the assumption and exercise of control over the service line that is significant. See, also, Manning v. St. Paul Gaslight Co. 129 Minn. 55, 151 N. W. 423, L. R. A. 1915E, 1022.

Although the instructions were not erroneous, under the facts and circumstances here, it is our opinion that it should have been held as a matter of law that the village had control over the service line and and that the issue should not have been submitted to the jury. Our reason for this is that the installation of the underground shutoff valve at the point where the service line connects to the main line; the fact that information relative to the location of this valve is held by the village; and the fact that that valve is actuated by a "key" which is kept in the possession of the village all indicate as a matter of law that the village had assumed control of the service line.

The village cannot relieve itself of its duties in connection with the service line by merely indicating that it has not in fact exercised any control by inspections, where the record shows, as here, that it had assumed control by the installation of a shutoff valve under circumstances which render it within the control of the village. In view of the fact that by its own admission the village had not inspected the line prior to turning on the gas nor ever inspected the line before the explosion, we are of the opinion that as a matter of law such conduct with regard to the maintenance of the service line did not constitute reasonable care commensurate with the danger involved, which was the duty imposed upon the village. See, 24 Am. Jur., Gas Companies, § 27. Also, such negligence operated concurrently with the negligence of Mrs. Cosette in causing the injuries to Ondarko, rendering the de-

fendants jointly and severally liable. 19 Dunnell, Dig. (3 ed.) § 9643.

In view of our decision it is not necessary to grant a new trial as to the issue of the negligence of defendant village.

The order is affirmed with respect to the estate of Della Cosette and reversed with respect to the village of Hibbing and the cause remanded with instructions to enter judgment in the amount of $18,500 against both defendants as joint tortfeasors.