ERNA AUSTIN v.
METROPOLITAN LIFE INSURANCE COMPANY.

152 N. W. (2d) 136.

July 7, 1967—No. 40,638.

*Duane M. Peterson Law Office,* for appellant.
*O'Brien, Ehrick & Wolf* and *Michael Berens,* for respondent.

MURPHY, JUSTICE.

This is an appeal from a summary judgment for defendant. Both parties moved for summary judgment upon the pleadings, depositions, and an affidavit of one of the attorneys.[1] It is the contention of plaintiff that the

---

[1] There is some dispute in the record as to whether or not the trial court

court erred in determining that there was no genuine issue as to any material fact and that defendant was entitled to judgment as a matter of law within the purview of Rule 56, Rules of Civil Procedure.

It appears from the record that plaintiff, Erna Austin, age 63, was employed by Stirneman-Selover Realty Company, a building-management firm, to clean floors and offices of the Kresge Building in downtown Winona. It was plaintiff's practice to come to work at 3 a. m. to wax the floors and clean the "stairways, the restroom, and the hallway" of the building. Defendant, Metropolitan Life Insurance Company, was a tenant occupying space on the second floor of the building. Plaintiff's duties included cleaning this office space, compensation for which was included in the rent paid by Metropolitan. On Saturday morning, March 17, 1962, plaintiff went to the second floor of the building to clean the Metropolitan offices and found a 2-foot-high pile of papers piled against the wall in the hallway opposite the offices. It is conceded that the building management had requested the Metropolitan people not to pile discarded material in the common hall but to place it in cardboard barrels located under the stairway going to an upper floor. This material included discarded insurance literature and brochures, some of which were strewn out away from the pile into a 3- or 4-foot area of the hall floor. Mrs. Austin swept the papers aside with her broom "so I could get in with the barrel." A container about the size of a "shoe box" was placed on top of the pile, and she testified that when she stooped over to pick it up, "my feet went out from under me."

"Q. After you had picked up the box when did you fall?

"A. As I was coming up my feet went out from under me, and I went backwards.

---

passed upon the motion before having had an opportunity to read plaintiff's deposition. The following statement of the trial court is contained in the record: "While I did not have the deposition available I did have access to Mr. Blake's [court reporter] notes and my recollection and his recollection is that I resorted to them. However I cannot say this as a positive fact. At any rate my order for judgment was dated February 11, 1966. I believe that a person who makes a motion for Summary Judgment on the files and records and does not complete the record in a year's time is in no position to complain that the Court did not have all of the record available."

"Q. As you were lifting the box up from its resting position—

"A. As I was straightening myself up my feet went out from me, and I went backwards."

She fell on her back and side, and it is alleged that she sustained a fractured vertebra and a permanent back injury.

The hall in which Mrs. Austin was working was well lighted. There was "a rather pronounced downgrade" in the structure of the floor near where plaintiff fell and the floor was waxed. Whether it was the strewn paper which caused her to fall, Mrs. Austin was unable to say with any degree of certainty.

"Q. You have been standing on the floor or you may have been standing on some of the papers themselves?

"A. I imagine it was papers, because I have never slipped on that floor before, and it is a level floor there.

"Q. But you don't have any knowledge of what you were standing on; is that right?

"A. I just have knowledge that I think I was standing on paper.

"Q. But you didn't observe that your feet were on papers or not?

"A. At the time?

"Q. Yes.

"A. No, I didn't.

"Q. And after you fell, did you have presence of mind to look back at the situation and see where your feet—

"A. Then I see where the papers were shoved aside where my feet had been—I seen the paper was shoved aside so it was to my knowledge that it was paper that was under my feet."

The court was of the view that there was no breach of duty which would give rise to liability on the part of defendant and that the injuries sustained by plaintiff were compensable by workmen's compensation.

It is plaintiff's contention that by placing the discarded papers in the hallway defendant created a dangerous condition which caused the accident and resulted in her injuries. She relies on Swenson v. Slawik, 236 Minn. 403, 53 N. W. (2d) 107, where we held, under the facts, that the

plaintiff garbage collector was an invitee at the time he sustained an injury to his hand because of a defective condition in an elevator door and was a member of a class of persons to whom the defendant landlord was under obligation to exercise ordinary care in maintaining the elevator in a reasonably safe condition. In that case the defendant was negligent in maintaining a facility which the plaintiff was required to use in the performance of his duties. We do not think that authority is particularly helpful here. Under the facts in this case, plaintiff was hired to pick up and remove discarded papers, and it would seem not to be material whether the papers were placed for removal in the office or in the hallway. The liability of defendant company must be considered in the light of elementary principles of negligence law as they apply to a breach of duty owed by defendant to plaintiff. The common-law test of duty is the probability or foreseeability of injury to plaintiff. As expressed by Mr. Chief Justice Cardozo, "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." Palsgraf v. Long Island R. Co. 248 N. Y. 339, 344, 162 N. E. 99, 100, 59 A. L. R. 1253, 1256; 13B Dunnell, Dig. (3 ed.) § 6973; Knutson v. Lambert, 235 Minn. 328, 51 N. W. (2d) 580; Schmanski v. Church of St. Casimir of Wells, 243 Minn. 289, 67 N. W. (2d) 644; Connolly v. The Nicollet Hotel, 254 Minn. 373, 95 N. W. (2d) 657, 74 A. L. R. (2d) 1227; Akers v. Chicago, St. P. M. & O. Ry. Co. 58 Minn. 540, 60 N. W. 669; Christianson v. Chicago, St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640; Prosser, Torts (3 ed.) § 30; Restatement, Torts, § 281.

In considering the degree of care to be exercised by defendant under the circumstances of this case, it is relevant to consider the nature of the work in which plaintiff was engaged. Negligence must be predicated upon what one should anticipate and not merely on what happened. McDonald v. Fryberger, 233 Minn. 156, 46 N. W. (2d) 260. It would not be reasonable to say that the manner in which defendant set aside its wastepaper involved a danger to one whose duty it was to remove it. The duty to exercise care is dictated and measured by the exigencies of the occasion as they are or should be known, and if no harm should be anticipated as a consequence of the act, there can be no negligence. Knutson v. Lam-

218

bert, *supra*; Lovejoy v. Minneapolis-Moline Power Imp. Co. 248 Minn. 319, 79 N. W. (2d) 688.

Affirmed.