John CRACRAFT, a minor, by his father and natural guardian, Jack Cracraft, et al., Appellants,

Leon Kasper, as Trustee for the Heirs of Kenneth Kasper, et al., Appellants,

v.

CITY OF ST. LOUIS PARK, Respondent.

No. 47852.

Supreme Court of Minnesota.

April 27, 1979.

Meshbesher, Singer & Spence, Russell M. Spence, and Carol M. Grant, Minneapolis, for appellants.

Ochs, Larsen, Klimek & Olson, and Norman W. Larsen, Minneapolis, for respondent.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., and Kent G. Harbison, Sp. Asst. Atty. Gen., St. Paul, for State of Minnesota.

David A. Singer, Thomas Wolf, President, and Gordon W. Schumaker, Chairman, Appellate Advocacy Committee, St. Paul, for Minnesota Trial Lawyers Assn.

Stanley G. Peskar, Gen. Counsel, St. Paul, for League of Minnesota Cities.

Heard before PETERSON, KELLY, and YETKA, JJ. Reheard and considered and decided by the court en banc.

TODD, Justice.

This is an appeal brought by the plaintiffs Jack Cracraft, individually, and as the guardian of his minor child, John Cracraft; and Leon Kasper, individually, and as the trustee for the heirs of Kenneth Kasper, against the defendant city of St. Louis Park. This suit involves the alleged negligent failure of a city inspector to discover a violation of the municipal fire ordinance at Benilde-St. Margaret's High School, St. Louis Park, Minnesota. After argument by the parties, the trial judge granted summary judgment in favor of the city. Plaintiffs appeal from that judgment. We affirm.

On October 27, 1974, a 55-gallon drum of duplicating fluid, an extremely volatile and highly flammable liquid, ignited on the loading dock of Benilde High School. The dock is adjacent to the school's football field and is commonly used by students as a means of ingress and egress.

As a result of the explosion, three youths received first, second, and third-degree burns over their entire bodies. Two of the boys died, including Kenneth Kasper. A third boy, plaintiff John Cracraft, received severe burns over 50 percent of his body.

The city fire inspector, Gerald Hines, inspected the entire premises on September 13, 1974. This inspection was conducted pursuant to a city ordinance. The presence of a drum of duplicating fluid on the dock would be a violation of the fire code. Mr. Hines testified, in deposition, that he did not see the drum at the time of his inspection. He stated that if it was there at the time of the examination, it would have been noticed and removed.

■ Plaintiffs contend that the city must conduct an inspection with due care, that the city's inspection was negligently performed, and the negligence was a substantial causal factor of the injuries and damages. Defendant municipality, on the other hand, contends that it owed no duty of care for the purposes of a negligence action. Thus, the question in this case becomes: Under what conditions is a duty of care imposed on a municipality which seeks to enforce the law by inspecting for fire code violations? It is important to distinguish the issue presented by this case from confusingly similar issues. We are not concerned with the legal duties owed by municipalities as owners and operators of buildings, roadways, or other facilities.[1] Nor are we concerned with the duty of a municipality to comply with its own safety codes as

we were in *Lorshbough v. Township of Buzzle*, 258 N.W.2d 96 (Minn.1977). These duties to comply with the law are analogous to those owed by private persons, and a breach of such duties can be the basis of a lawsuit against the municipality just as it can be the basis of a lawsuit against private tortfeasors. We are, instead, considering the municipality's unique duty to enforce the law by taking steps to assure that third persons comply with the law.

To hold a municipality liable for negligently inspecting the conduct of third persons for fire code violations, plaintiffs must establish that the municipality has a common-law duty to provide a reasonable inspection. In 1972, this court decided *Hoffert v. Owatonna Inn Towne Motel, Inc.*, 293 Minn. 220, 199 N.W.2d 158 (1972). In *Hoffert*, plaintiffs were guests at a motel that had been recently remodeled. The owners of the motel had submitted their proposal for improvements to the city of Owatonna. The city engineer and building inspector then examined the motel and issued a building permit. The building inspector also examined the premises during construction. Two weeks after the last inspection, a fire broke out in the motel and the plaintiffs alleged they were trapped on the second floor because of improper stairway enclosures constructed in violation of the building code.

This court affirmed the dismissal of the complaint against the city. Although recognizing that the Minnesota Legislature had abolished the doctrine of sovereign immunity as it applied to the political subdivision of the state,[2] we held (293 Minn. 222, 199 N.W.2d 159):

" * * * [T]hese statutory provisions [abolishing immunity] merely removed the defense of immunity. They did not create any new liability for a municipality. In order to recover against the city,

1. See, *Ondarko v. Village of Hibbing*, 256 Minn. 17, 96 N.W.2d 865 (1959) (duty of care when operating a gas service line); *Diker v. City of St. Louis Park*, 268 Minn. 461, 130 N.W.2d 113 (1964) (duty of care when operating a hockey rink).

2. Minn.St. 466.02 provides: "Subject to the limitations of sections 466.01 to 466.15, every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function."

appellants must show a breach of some duty owed them in their individual capacities and not merely a breach of some obligation owed the general public.

"The purpose of a building code is to protect the public."

The court went on to state (293 Minn. 223, 199 N.W.2d 160):

"Building codes, the issuance of building permits, and building inspections are devices used by municipalities to make sure that construction within the corporate limits of the municipality meets the standards established. As such, they are designed to protect the public and are not meant to be an insurance policy by which the municipality guarantees that each building is built in compliance with the building codes and zoning codes. The charge for building permits is to offset expenses incurred by the city in promoting this public interest and is in no way an insurance premium which makes the city liable for each item of defective construction in the premises."

Because the building code ordinances did not create a duty owed to plaintiffs as individuals, they could not recover for the alleged negligence of the city's employees.

The *Hoffert* decision is controlling in this case. Recently, however, significant criticism has been launched against the distinction between a duty owed to the public in general (which cannot be the basis of a negligence action) and a duty owed to individual members of the public (which can be the basis of a negligence action). See, *Adams v. State*, 555 P.2d 235 (Alaska 1976); *Coffey v. City of Milwaukee*, 74 Wis.2d 526, 247 N.W.2d 132 (1976). See, generally, Note, 13 Columbia J.L. & Soc.Prob. 303; Note, 23 Loyola L.Rev. 458. The distinction, say the critics, is a relic of sovereign immunity and should be discarded upon the abolition of sovereign immunity. Plaintiffs

contend that the distinction should be discarded and *Hoffert* should be overruled.

■ We disagree. By abolishing the distinction between public duty and special duty, this court would depart from vast precedent and traditional common-law principles of negligence. The distinction is not merely a relic of the verbiage used by courts in days of sovereign immunity. Instead, it is a corollary to a basic tenet of negligence law: general duties owed to the entire public rather than a specific class of persons cannot form the basis of a negligence action.[3]

To demonstrate that the distinction between public duty and special duty is not a doctrine unique to governmental torts, we start our analysis of the duty to enforce the law by placing municipalities on the same footing as any other person.

The common-law rule, of course, is that generally there is no duty to prevent the misconduct of a third person. As stated in Restatement, Torts (2d), § 315:

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

"(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

"(b) a special relation exists between the actor and the other which gives to the other a right to protection."

At the outset then, there is no common-law duty imposed on any individual or any municipality to inspect and correct the fire code violations of a third person unless there is a "special relation" between the parties.

■ If there were no additional considerations in this case, it could be concluded at this point that the defendant municipality

---

**3.** In his classic treatise, Thomas Cooley states (3 T. Cooley, Law of Torts, § 478, p. 366): "A duty may be general, and owing to everybody, or it may be particular, and owing to a single person only by reason of his peculiar position. Instances of the latter sort [include] * * * the duty of every person to so conduct his business as to avoid exposing others to injury. But a duty owing to everybody can never become the foundation of an action until some individual is placed in position which gives him particular occasion to insist upon its performance; it then becomes a duty to him personally."

had no duty, public or special, to inspect and correct fire code violations. There are additional considerations, however. The municipality's own ordinances require that it undertake inspections for fire code violations.[4] However, such inspections are required for the purpose of protecting the interests of the municipality as a whole against the fire hazards of the person inspected. The inspections are not undertaken for the purpose of assuring either the person inspected or third persons that the building is free from all fire hazards, just as the state's issuance of a driver's license is no assurance that the licensed person will be a safe driver. Because the ordinances are designed to protect the municipality's own interests, rather than the interests of a particular class of individuals, only a "public" duty to inspect is created. It is a basic principle of negligence law that public duties created by statute cannot be the basis of a negligence action even against private tortfeasors. Restatement, Torts (2d), § 288, states in part:

"The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively

"(a) to protect the interests of the state or any subdivision of it as such, or

"(b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public, or

"(c) to impose upon the actor the performance of a service which the state or any subdivision of it undertakes to give the public * * *."

The comments to this section are also instructive that the distinction between public duty and special duty applies to alleged private tortfeasors as well as alleged public tortfeasors.[5] This distinction, therefore, is

---

4. The record indicates that the relevant portions of the ordinances read: "Section 5:1101. Establishment of Bureau of Fire Prevention. The Fire Prevention Code shall be enforced by the Bureau of Fire Prevention in the Fire Department of the City of St. Louis Park which is hereby established and which shall be operated under the supervision of the Chief of the Fire Department."

"Section 1:404. Inspection and Elimination of Fire Hazards.

"A. Fire Prevention Duties of the Chief. The Chief of the Fire Department shall enforce all laws and ordinances covering the following:

"(a) Inspection of potential fire hazards.

"(b) Abatement of existing fire hazards.

"(c) Investigation of the cause, origin and circumstances of fires.

"(d) Control and use of explosives and flammables.

 * * * * * *

"C. Scope of Inspection Authorized. The inspection and examination authorized by this Ordinance shall be for the purpose of reporting and correcting the following fire hazards pertaining to buildings and their occupants:

 * * * * * *

"(h) Conditions endangering other property or occupants.

"(i) Any other fire hazards dangerous to life or property.

"D. Required Inspections. It shall be the duty of the Chief to cause to be inspected:

"(a) Buildings and Premises. All buildings and premises within the Fire Limits not less than twice a year.

"(b) Place of Public Assembly. All places of public assembly not less than once a month."

5. Restatement, Torts (2d, § 288, comment b, states: "Many legislative enactments and regulations are intended only for the protection of the interests of the community as such, or of the public at large, rather than for the protection of any individual or class of persons. Such provisions create an obligation only to the state, or to some subdivision of the state, such as a municipal corporation. The standard of conduct required by such legislation or regulation will therefore not be adopted by the court as the standard of a reasonable man in a negligence action brought by the individual."

Comment d states: "Other legislative enactments and administrative regulations are intended only for the purpose of imposing upon the actor the performance of a service which the state, or some subdivision of it, has undertaken to give to the public. They are intended to make the actor responsible to the state, rather than to any individual * * *."

Illustration 5 states: "A municipal ordinance provides that abutting property owners must repair defects in sidewalks and remove snow and ice from them, and that if they fail to do so they shall be liable to the city for the cost of the repairs or removal. The ordinance is construed to have no other purpose than to impose responsibility to the city. A, an abutting owner, fails to remove ice from the sidewalk. B slips on the ice and is injured. The ordinance does not provide a standard of conduct for the benefit of B."

neither a fiction, nor artificial, nor a relic of the days of sovereign immunity. It is a well-established principle of negligence law applicable to tort actions against individuals as well as governments.

We hold, therefore, that a municipality does not owe any individual a duty of care merely by the fact that it enacts a general ordinance requiring fire code inspections or by the fact that it undertakes an inspection for fire code violations. A duty of care arises only when there are additional indicia that the municipality has undertaken the responsibility of not only protecting itself, but also undertaken the responsibility of protecting a particular class of persons from the risks associated with fire code violations. This is the rule set forth in *Hoffert.* This rule, or a similar rule, is recognized by all but two courts that have considered the issue.[6] It is also the rule in the context of other law enforcement activities.[7] Only two cases, *Adams v. State, supra,* and *Coffey v. City of Milwaukee, supra,* have abolished this time-honored distinction between public duty and special duty. We find these cases unpersuasive.

We refuse, therefore, to abolish the distinction between public duty and special duty. The concept of a special duty is not unique to government torts. "Special duty" is nothing more than convenient terminology, in contradistinction to "public duty," for the ancient doctrine that once a duty to act for the protection of others is voluntarily assumed, due care must be exercised even though there was no duty to act in the first instance. *Isler v. Burman,* 305 Minn. 288, 232 N.W.2d 818 (1975). "Special duty," therefore, could also effectively be termed "assumed" duty. It is somewhat unfortunate that the terms "public" duty and "special" duty have been used, inasmuch as they give the misleading impression that the distinction applies only to governmental tortfeasors. Perhaps "no duty" and "assumed" duty would be more appropriate.

At what point, then, does the municipality assume to act for the protection of others as distinguished from acting merely for itself when it inspects the activities of third parties for fire code violations? There is no bright line. But, without intending to be exhaustive, there are at least four factors which should be considered. First, actual knowledge of the dangerous condition is a factor which tends to impose a duty of care on the municipality.[8] Second, reasona-

---

**6.** See, *Duran v. City of Tucson,* 20 Ariz.App. 22, 509 P.2d 1059 (1973); *Modlin v. City of Miami Beach,* 201 So.2d 70 (Fla.1967); *Dufrene v. Guarino,* 343 So.2d 1097 (La.App.), writ denied, 343 So.2d 1069 (La.1977); *Smullen v. City of New York,* 28 N.Y.2d 66, 320 N.Y.S.2d 19, 268 N.E.2d 763 (1971); *Campbell v. City of Bellevue,* 85 Wash.2d 1, 530 P.2d 234 (1975), second appeal on other grounds, 86 Wash.2d 572, 546 P.2d 922 (1976). See, generally, Note, 13 Columbia L.J. & Soc.Prob. 303; Note, 23 Loyola L.Rev. 458.

Some other courts have denied recovery on the grounds that the municipality's inspection was governmental rather than proprietary, or discretionary rather than ministerial. See, *E. Eyring & Sons Co. v. City of Baltimore,* 253 Md. 380, 252 A.2d 824 (1969); *Fiduccia v. Summit Hill Constr. Co.,* 109 N.J.Super. 249, 262 A.2d 920 (1970). Such analysis is inappropriate in this case. Municipalities are subject to tort liability even if the activity is governmental rather than proprietary. Minn.St. 466.02. And although municipalities cannot be held liable for discretionary acts, Minn.St. 466.03(6), the distinction between ministerial and discretionary acts relates to the municipality's defense of immunity rather than the question of whether it even has a duty of care.

**7.** Ordinarily, a municipality is not liable for failure to provide police protection unless a special duty to the plaintiff is created. See, *Massengill v. Yuma County,* 104 Ariz. 518, 456 P.2d 376 (1969); *Henderson v. St. Petersburg,* 247 So.2d 23 (Fla.App.), certiorari denied, 250 So.2d 643 (Fla.1971); *Huey v. Town of Cicero,* 41 Ill.2d 361, 243 N.E.2d 214 (1968). See, generally, Annotation, 46 A.L.R.2d 1084.

**8.** In *Hansen v. City of St. Paul,* 298 Minn. 205, 214 N.W.2d 346 (1976), plaintiff was bitten by dogs that were known by the city officials to be vicious and prone to unprovoked attacks. This court held the city had a duty to impound the dogs because the government clearly had knowledge of the dogs' vicious propensities.

Cases in other jurisdictions indicate that the government officials' knowledge of the code violations may create a special duty to the plaintiff. For example, the Washington Supreme Court in *Campbell v. City of Bellevue,* 85 Wash.2d 1, 530 P.2d 234 (1975), second appeal on other grounds, 86 Wash.2d 572, 546 P.2d

ble reliance by persons on the municipality's representations and conduct tends to impose a duty of care.[9] Of course, reliance on the inspection in general is not sufficient. Instead, the reasonable reliance must be based on specific actions or representations which cause the persons to forego other alternatives of protecting themselves. Third, a duty of care may be created by an ordinance or statute that sets forth mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole.[10] Finally, the municipality must use due care to avoid increasing the risk of harm.[11]

■ Applying these factors to this case, we find no evidence in the record indicating that a duty was assumed or a special duty was created. The inspector, without contradiction, stated that he had no actual knowledge of the 55-gallon drum on the loading dock. With regard to the factor of reliance, the inspection had resulted in the discovery of some problems and a letter was sent by the municipality to the school, listing several problems which had to be corrected immediately and several problems which had to be corrected as soon as possible. No reference was made to the 55-gallon drum of duplicating fluid. Any representations in this letter might be relied upon with regard to the enumerated problems, but under the facts of this case, no grounds for reasonable reliance exist with regard to hazards not set forth in the letter.

We have already indicated that the applicable codes, ordinances, or statutes have not been drawn with sufficient specificity to create an inspection duty in favor of a class

922 (1976), held that the city had a special duty to an area resident who reported to the city officials that her neighbor had improper electrical wiring in an underwater lighting system at a nearby creek. The court found that a special duty had been created because the inspector had knowledge of the neighbor's code violations and yet did not disconnect the wiring as required specifically by statute. See, also, Annotation, 46 A.L.R.3d 1084, § 7 (reporting cases which impose a special duty on police to protect the plaintiff when the police have knowledge of threatened criminal activity against the plaintiff).

**9.** The factor of reliance is present, for example, in *Smullen v. City of New York,* 28 N.Y.2d 66, 320 N.Y.S.2d 19, 268 N.E.2d 763 (1971). In that case, a city sewer inspector had told plaintiff's decedent that a trench was "pretty solid there" and that it did not need to be shored. The trench collapsed, killing the decedent. The New York Court of Appeals held these utterances established a special duty.

Similarly, Restatement, Torts (2d), § 324A, provides: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect [sic] his undertaking, if

\* \* \* \* \* \*

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." See, also, Restatement, Torts (2d), § 323(b).

**10.** The statute considered in *McCorkell v. City of Northfield,* 266 Minn. 267, 123 N.W.2d 367 (1963), affirmed second appeal on other grounds, 272 Minn. 24, 136 N.W.2d 840 (1965), is illustrative of the type which may create a special duty to the plaintiff. In that case, a prisoner died from asphyxiation caused by a smoldering fire in an unattended jail. A statute contained in Minn.St. c. 642 required certain maintenance activities in prisons for the health and safety of prisoners. Because the statute was clearly designed to impose a duty of care for the benefit of prisoners, this court found a cause of action was stated against the municipality for failure to comply with the mandatory provisions of the statute.

Other courts have found a special duty to the plaintiff based on a statute containing mandatory acts for the benefit of a class of persons. See, *Runkel v. City of New York,* 282 App.Div. 173, 123 N.Y.S.2d 485 (1953), affirmed on second appeal on other grounds sub nom., *Runkel v. Homelsky,* 286 App.Div. 1101, 145 N.Y.S.2d 729 (1955); *Campbell v. City of Bellevue,* 85 Wash.2d 1, 530 P.2d 234 (1975), second appeal on other grounds, 86 Wash.2d 572, 546 P.2d 922 (1976).

**11.** Restatement, Torts (2d), 324A, states in part: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect [sic] his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm \* \* \*." See, also, Restatement, Torts (2d), § 323(a).

of individuals rather than the public as a whole. Finally, the municipality did nothing to increase the risk. Even assuming the 55-gallon drum was on the dock at the time of the inspection, the risk of explosion prior to the inspection was the same as after the inspection. Because the record fails to show the creation of an assumed or special duty, summary judgment for defendants must be affirmed.

In conclusion, we refuse to impose a duty of care merely because an inspection is undertaken, for it would create a new tort. It would expand the concept of "assumed duty" beyond its common-law proportions. This court will not undertake such a radical change, for the change has no relation whatsoever to the abolition of sovereign immunity. We feel compelled to reiterate: The abolition of sovereign immunity created no new torts. And even if the harsh results of the doctrine of sovereign immunity could provide a reason for creating a new tort once the doctrine was abolished, such results are not present in this situation. Prior to abolishment of sovereign immunity, an injured party was left with no right of recovery when the state or municipality was the sole negligent actor, a result which clearly contradicted our constitutional mandate that every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person or property. Minn.Const. art. 1, § 8. In this situation, there exist viable defendants who allegedly violated the fire codes and may be held responsible at law if their negligence caused injury to the plaintiffs. We are being asked to add another defendant; namely, the municipality involved. If such an expansion and change of the law is to occur, it is better that the legislature act in this field where extensive hearings can be conducted to consider the extent of the financial impact of such a basic change. It is quite apparent that we are unable to comprehend the ramifications of imposing a duty to enforce the law with reasonable care. It is of little help to assume that the municipalities will not often be liable or that their financial exposure is limited by statute. This assumption may be false, and in any event, municipalities will often be named as defendants in a host of litigation where they presently have no exposure. The cost of defense is a vital ingredient in procuring insurance or providing self-insurance for such litigation.

Manifestly, then, the creation of a new duty owed by municipalities and other governmental entities to enforce the law with reasonable care is a change which should be made by the legislature. We will not assent to such a change by the judiciary.

Affirmed.

KELLY, Justice (dissenting).

In its decision affirming the trial court, the majority purports to be doing no more than applying well-established rules of negligence law to the facts of the instant case. I respectfully disagree. A close analysis of the opinion in conjunction with a review of the applicable legal principles reveals that the majority's opinion would salvage the last vestiges of sovereign immunity under the theory of a strict duty analysis.

The determination of whether and under what standard a city should be held liable for negligent inspection of premises under a municipal fire ordinance is a difficult question involving far-reaching considerations of social and political significance. In most cases, however, the determination that a given duty under a statute is a "public" one is merely a shorthand statement of a conclusion rather than an aid to analysis. A court's holding that a given duty is "public" or "special" generally stops short of necessary inquiry into the specific effects and other considerations which bear on the root policy issue involved.

No less an authority on torts than Prosser has stated as much in his respected treatise. Referring to duty, he says:

"Its artificial character is readily apparent; in the ordinary case, if the court should desire to find liability, it would be quite as easy to find the necessary 'relation' in the position of the parties toward one another, and hence to extend the defendant's duty to the plaintiff. The

statement that there is or is not a duty begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. It is a shorthand statement of a conclusion, rather than an aid to analysis in itself * * *. But it should be recognized that 'duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." Prosser, Torts, § 53, p. 325.

Other commentators have also written on the nature of "duty" in the law of negligence, finding it to be wholly superfluous. The general theory expressed by these writers is that duty is simply a restriction on an individual's freedom of conduct requiring him to behave as a reasonably prudent man would behave in similar circumstances. Winfield, Duty in Tortious Negligence, 34 Col.L.Rev. 41; Green, The Duty Problem, 28 Col.L.Rev. 1014; 29 Col.L.Rev. 255. This was persuasively pointed out in *A. E. Investment Corp. v. Link Builders, Inc.*, 62 Wis.2d 479, 214 N.W.2d 764, 766 (1974):

" * * * The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act * * *.

"A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones. In addition, he is liable to unforeseeable plaintiffs."

Nevertheless the majority opinion is bottomed on the distinction between a public duty and a special or private duty. I believe this distinction is artificial and that this is borne out by a close analysis of established legal principles.

Justice Cardozo stated the general rule in *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275, 276:

"It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all."

Restatement, Torts (2d) § 324A expresses this rule as follows:

"One who undertakes, gratuitously or for consideration to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

That injuries to a third person as a result of a negligent building inspection are foreseeable is without doubt. It seems equally clear that the plaintiffs here arguably fit into any of the three categories set out in the Restatement provision above, but most certainly into the first and third. In the first instance, the duty is created because the risk of injury is increased by the inspector's failure to report and enforce existing code violations. The third provision creates a duty founded upon the reliance of either the landowner or the injured victim on the defendant's undertaking. In this case, the school's reliance is clearly justified. By adopting the ordinance in question, the city set certain minimum fire safety requirements and established itself as the enforcement agent thereby inducing reliance upon the reports of its inspector. After each inspection the school received a report from the city indicating any violations found by the inspector. It does not seem to be unreasonable for the school to assume that other than the specific violations cited in the report, the condition of the building was

safe. Not only do the landowners come to rely on the reports of the inspectors, but the public for whose benefit the inspections are made does so as well. Yet the majority tells us that members of the public cannot rely on services of the municipality performed pursuant to statute or ordinance because it owes them no duty to use due care. Common principles of negligence and public policy counsel otherwise.

The majority contends that it is creating no special rule for municipalities, but merely placing them on the same footing as any other person. However, an examination of the comments and illustrations given in Restatement, Torts (2d) § 324A reveals that a private individual or company in the same position as the city would undoubtedly be subject to liability for a negligent inspection. This proposition is amply supported by the case law. See, *Hill v. United States Fidelity & Guaranty Co.*, 428 F.2d 112 (5 Cir. 1970) certiorari denied 400 U.S. 1008, 91 S.Ct. 564, 27 L.Ed.2d 621 (1971) (negligent inspection by private insurer); *Beasley v. MacDonald Engineering Co.*, 287 Ala. 189, 249 So.2d 844 (1971) (negligent inspection by private insurer); *Sims v. American Casualty Co.*, 131 Ga.App. 461, 206 S.E.2d 121 (1974) (negligent inspection by workers' compensation insurer); *Buszta v. Souther*, 102 R.I. 609, 232 A.2d 396 (1967) (negligent inspection of automobile by private service station pursuant to state statute). Because we have abrogated sovereign immunity, I see no reason why, under the general principles of torts, the city, like any other enterprise, should not be held liable for the negligence of its inspectors resulting in foreseeable injury. This view is accepted by Cooley, 2 Cooley on Torts § 304 and is widely advocated by the legal commentators. See, generally, Note, 23 Loyola L.Rev. 458; Note, 13 Col.J.L. & Soc.Prob. 303. Admittedly, there are a number of cases cited by the majority that hold a city immune from liability for a negligent inspection on the basis of the public duty-special care distinction. These cases, however, are singularly without cogent analysis and can be read only as judicial attempts to insulate municipalities as much as possible from unwanted tort liability. See, *Riss v. City of New York*, 22 N.Y.2d 579, 293 N.Y.S.2d 897, 898, 240 N.E.2d 860, 861 (Keating, J., dissenting). What these cases and the majority are in effect saying is that a public duty equals no duty. I simply cannot agree. See, *Adams v. State*, 555 P.2d 235 (Alaska 1976); *Coffey v. City of Milwaukee*, 74 Wis.2d 526, 247 N.W.2d 132 (1976).

In *Adams v. State*, supra, the Alaska Supreme Court, recognizing that sovereign immunity had been largely abrogated by statute in that state, upheld a suit against the state where it was alleged that due to the negligent inspection of an Anchorage fire inspector, a hotel fire started in which five people died. The attorneys for the state contended, as defendants do here, that the building codes and fire inspection laws enacted by the State of Alaska were for the benefit of the general public only. In rejecting that argument, the court there stated, in part:

"* * * The purpose of fire inspection is to protect life and property from fire; the purpose of [this] inspection was to discover and alleviate fire hazards endangering users of the hotel. Plaintiffs or their decedents were members of that class; they were the intended beneficiaries of the inspection services provided and the foreseeable victims of the fire hazards left uncorrected.

* * * * * *

"Second, we consider that the 'duty to all, duty to no-one' doctrine is in reality a form of sovereign immunity, which is a matter dealt with by statute in Alaska, and not to be amplified by court-created doctrine. An application of the public duty doctrine here would result in finding no duty owed the plaintiffs or their decedents by the state, because, although they were foreseeable victims and a private defendant would have owed such a duty, no 'special relationship' between the parties existed. Why should the establishment of duty become more difficult when the state is the defendant? Where there is no immunity, the state is to be treated like a private litigant. To allow the public duty doctrine to disturb this equality

would create immunity where the legislature has not." 555 P.2d 241–242.

I find this reasoning to be logical and consistent with basic principles of law. Accord, *Coffey v. City of Milwaukee*, 74 Wis.2d 526, 247 N.W.2d 132 (1976).

The artificiality of the public duty-special duty distinction is further demonstrated by the facility with which courts that recognize this distinction are able to find a special duty in cases wherein they wish to allow recovery. See, e. g., *Foley v. State of New York*, 294 N.Y. 275, 62 N.E.2d 69; Id., 177 Misc. 443, 30 N.Y.S.2d 998 (1945); *Serpas v. Margiotta* 59 So.2d 492 (La.App. 1952). *Campbell v. City of Bellevue*, 85 Wash.2d 1, 530 P.2d 234 (1975). In the above cases, recovery was allowed under circumstances where, under the general rule relied on by the majority, it would clearly have been denied. See, *Hoffert v. Owatonna Inn Towne Motel, Inc.*, 293 Minn. 220, 199 N.W.2d 158 (1972). The majority opinion itself suggests that there may be occasions where a "public duty" may be transformed by the circumstances into a "special duty." It is precisely this type of treatment by the courts that prompted Chief Judge Desmond to bemoan the majority rule's " * * * exceptions, interpretations and inconsistencies galore." *Motyka v. City of Amsterdam*, 15 N.Y.2d 134, 256 N.Y.S.2d 595, 204 N.E.2d 635 (dissenting).

It is obvious that the majority opinion does not make the tort liability of the state and local governments co-equal with that of private entities. There may be a reluctance to permit such liability, presumably based on the fear of the crushing burden of limitless liability which may be placed on the political subdivisions of the state if such suits were allowed to be brought. Some courts have indicated a belief that subjecting governmental units to suits of this sort would unduly impinge on the business of governing. Such apprehension is understandable. It is difficult to state with any certainty the actual economic impact of allowing suits of this type. Theoretically, many hundreds of people could be included within the class of persons intended to be protected by these kinds of ordinances. The possibility that a municipality may be held liable for the breach of every building code or zoning ordinance within the city, and the consequent enormous potential drain of the public coffers, is often raised as the prime justification for the "public duty doctrine." See, *Lorshbough v. Township of Buzzle*, 258 N.W.2d 96 (Minn.1977); and *Hoffert v. Owatonna Inn Towne Motel, Inc., supra.*

Such arguments, however, were raised a decade ago in opposition to the proposal that the state waive its defense of sovereign immunity. See, *Spanel v. Mounds View School Dist. No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962). These contentions proved to be false then and they are just as likely to be false now. See, Borchad, Governmental Liability in Tort, 34 Yale L.J. 129 (1924); Antieau, *Statutory Expansion of Municipal Tort Liability*, 4 St. Louis U.L.J. 341 (1957). Furthermore, the tort liability act sets maximum liability limits of $300,000 on any tort committed by a municipality.[1] Thus, the problem of potential unlimited liability of the cities has been largely abrogated by the legislature.

Moreover, by allowing suits of this type against the state, the state does not assume an absolute duty to enforce its laws and ordinances. Cities will not be held to guarantee compliance with codes and to insure the safety of every building in the city, as the majority seems to indicate. Rather, cities will be held only to a standard of due and reasonable care, liability being limited by such principles as proximate cause and foreseeability.

1. Minn.St. 466.04 states in pertinent part: "Subdivision 1. Liability of any municipality on any claim within the scope of sections 466.01 to 466.15 shall not exceed

"(a) $100,000 when the claim is one for death by wrongful act or omission and $100,000 to any claimant in any other case;

"(b) $300,000 for any number of claims arising out of a single occurrence.

"No award for damages on any such claim shall include punitive damages."

Finally, there are many defenses to municipal tort liability already set out by our legislature in Minn.St. c. 466.[2] These exceptions provide ample protection to political subdivisions of the state, and no further exceptions to tort liability need be judicially created.

In addition to the legal justification stated above, there are reasons of public policy which convince me that the decision of the majority is erroneous. By immunizing municipalities from tort liability arising out of the negligent performance of a "public duty," the majority opinion severely undermines any motivation on the part of a municipality to insure that such important duties as fire inspection are properly performed—rendering these duties meaningless. Furthermore, by hanging onto this relic of governmental immunity, the majority is perpetuating the inequity we strove to banish when we abrogated sovereign immunity. I believe that Judge Desmond said it most clearly in his dissent in the case of *Motyka v. City of Amsterdam*, 15 N.Y.2d 134, 141, 256 N.Y.S.2d 595, 599, 204 N.E.2d 635, 638:

> "The time has come to remove from our law all the remaining vestiges of governmental immunity. We should be done with exceptions and incongruities. We should cut through the wilderness of special instances and say * * * that municipal nonliability for injury-causing breaches of duty is archaic and unjust. Cities should be held to the same standards of conduct as apply to private per-

sons, since the risk of liability * * * is incidental to municipal activities."

I would reverse the decision of the trial court.[3]

YETKA, Justice (dissenting).

I join in the dissent of Mr. Justice Kelly.

SCOTT, Justice (dissenting).

I agree with the dissent of Mr. Justice Kelly. In addition, I believe that today's holding is inconsistent with the decision reached in the recent case of *Kossak v. Stalling*, 277 N.W.2d 30 (Minn.1979). In *Kossak*, we declared unconstitutional the commencement of suit requirement contained in Minn.St. 466.05 and in so doing took a significant stride forward in striking down such artificial barriers which serve no purpose other than to foster the abolished doctrine of sovereign immunity. In sharp contrast, the majority holding in this case constitutes a step backward in that it perpetuates sovereign immunity by an erroneous and unjustified application of traditional common law negligence principles.

Justice Kelly's dissent very persuasively explains how a proper analysis of common law negligence requires a contrary result from that reached by the majority. The defective nature of the majority's reasoning is made all the more apparent by reference to the landmark case of *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253 (1928). In that oft-cited deci-

---

2. Minn.St. 466.03 provides: "Subdivision 1. Section 466.02 does not apply to any claim enumerated in this section. As to any such claim every municipality shall be liable only in accordance with the applicable statute and where there is no such statute, every municipality shall be immune from liability.

"Subd. 2. Any claim for injury to or death of any person covered by the worker's compensation act.

"Subd. 3. Any claim in connection with the assessment and collection of taxes.

"Subd. 4. Any claim based on snow or ice conditions on any highway or other public place, except when the condition is affirmatively caused by the negligent acts of the municipality.

"Subd. 5. Any claim based upon an act or omission of an officer or employee, exercising

due care, in the execution of a valid or invalid statute, charter, ordinance, resolution, or regulation.

"Subd. 6. Any claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

"Subd. 7. Any claim against a municipality as to which the municipality is immune from liability by the provisions of any other statute."

3. It should be noted that the trial court's decision was reluctantly made in the light of our previous decisions. The trial court's memorandum urged us to overrule our prior decisions and to do away with the immunity of governmental units based upon the "public duty" theory.

sion, the eminent jurist Mr. Justice Cardozo declared that the existence or non-existence of a duty depends upon whether the injury to the plaintiff was reasonably foreseeable. As Justice Cardozo stated:

" * * * The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." 248 N.Y. 344, 162 N.E. 100, 59 A.L.R. 1256.

The above principle, as articulated in the *Palsgraf* case, has been adopted and routinely applied by this court in numerous prior decisions. E. g., *Vogt v. Johnson*, 278 Minn. 153, 158, 153 N.W.2d 247, 251 (1967); *Austin v. Metropolitan Life Ins. Co.*, 277 Minn. 214, 217, 152 N.W.2d 136, 138 (1967); *Hanson v. Christensen*, 275 Minn. 204, 212, 145 N.W.2d 868, 874 (1966); *Rosin v. International Harvester Co.*, 262 Minn. 445, 451, 115 N.W.2d 50, 54 (1962); *Connolly v. Nicollet Hotel*, 254 Minn. 373, 381, 95 N.W.2d 657, 664 (1959).

Application of this reasonable foreseeability standard to this case clearly shows that, under a proper common law analysis, the City of St. Louis Park owed a duty to plaintiffs. It seems obvious that a governmental fire inspection is conducted to prevent damage, in particular personal injury, which may otherwise result if certain state and/or local regulations are violated. Certainly, it must therefore be reasonably foreseeable to the municipality that if the inspection is not done properly, individuals who use the premises in question, such as the plaintiffs in this case, may be injured. In other words, fire regulations and inspections conducted pursuant thereto are intended to prevent the exact kind of injuries which occurred here. How can it plausibly be argued, then, that it was not reasonably foreseeable that an improper inspection could result in harm to those who use the inspected premises?

As is apparent from the foregoing, application of the well-known *Palsgraf* standard, which this court has endorsed over and over, *id.*, dictates a different conclusion than that reached by the court today. I also note that the pertinent public policy considerations weigh overwhelmingly in favor of allowing plaintiffs to proceed in this action. See, dissent of Mr. Justice Kelly at 808–812. Accordingly, I cannot join in the majority's decision which, in effect, gives renewed life to the discarded doctrine of sovereign immunity by relying on a strained and mistaken interpretation of common law negligence principles.