Matthew RADKE, as trustee for the
next of kin of Makaio Lynn
Radke, Appellant,

v.

COUNTY OF FREEBORN,
et al., Respondents,

Peggy Radke, et al., Defendants.

No. A03–797.

Court of Appeals of Minnesota.

March 23, 2004.

Stephen C. Fiebiger, Stephen C. Fiebiger & Associates, Burnsville, MN, for appellant.

James R. Andreen, Erstad & Riemer, P.A., Minneapolis, MN, for respondents.

Considered and decided by KLAPHAKE, Presiding Judge, RANDALL, Judge, and HARTEN, Judge.

## OPINION

RANDALL, Judge.

Appellant, decedent's father and trustee for his next of kin, sued the county and two child protection workers for negligence after the 19–month–old child, whom they had visited following reports of abuse, was beaten to death by the boyfriend of the child's mother. On appeal from the district court's dismissal of the complaint for failure to state a claim upon which relief can be granted, appellant contends that the respondents assumed a duty to act with reasonable care, and that the wrongful-death negligence claim is based on this special duty. We cannot conclude the legislature either expressly or impliedly created a civil cause of action under the Child Abuse Reporting Act. We affirm.

## FACTS

Matthew (appellant) and Peggy Radke (Radke) were the parents of Makaio Lynn Radke (Makaio), born September 17, 1999. In January 2001, the parties separated and began the process of dissolving the marriage. Shortly thereafter, Kristina Baker and Paul Gutierrez began living at the same residence with Radke and Makaio. Due to complaints of abuse and neglect made by appellant, Makaio became the subject of investigation by the Freeborn County Department of Human Services.

On February 28, 2001, Dr. Mohammed G. Soud of the Albert Lea Medical Center examined Makaio. Dr. Soud issued a report of possible abuse to Peggy Ressler, a social worker with the Freeborn County Human Services Department. The report stated that Makaio had dry lesions behind his left ear, a scabbed lesion behind his right ear, a 5 × 5 cm bruise behind his right cheek and a 1 × 2 bruise on his left cheek. Based on this report, Ressler visited Makaio at home on March 2, 2001. At this visit, Radke told Ressler that Makaio's injuries were sustained when Makaio fell down. Neither Ressler nor the County investigated the situation further at that time.

A few weeks later, on March 21, 2001, appellant discovered bruising on Makaio's testicles and brought Makaio to the Albert Lea Police Department (ALPD). After the police took photographs, appellant took Makaio to Urgent Care at the Albert Lea Medical Center. An examination revealed that Makaio had a superficial well-crusted abrasion to the back of his head, a small superficial abrasion on the right side of his head, a linear abrasion behind his left ear, a 1.5 cm black and blue area on his left jaw, a 1.5 × 4 cm black and blue area on his left thoracic back near his spine, a peeling area with a linear edge approximately 3 cm wide on his lateral superior right thigh, like a burn, his left lateral foot on the plantar surface was bullous, deroofed and crusted like a burn measuring 1.5 × 7 cm, and a dried open area on the outer aspect of his left foot at the ball of

his foot onto his great toe, with scabbing, similar to a burn. Based on the examination, the doctor at Urgent Care suspected abuse, and the next day, the ALPD reported the suspected abuse to the Freeborn County Department of Human Services.

On March 26, 2001, Ressler again visited Makaio at Radke's home where she spoke with Radke and Gutierrez. Radke told Ressler that the mark on Makaio's foot was attributed to "hoof-and-mouth disease" (the record also reflects an alternative term, "hand-foot-mouth disease" as referred to by Radke). No further investigation was conducted at this time. Shortly thereafter, appellant received a letter from Ressler stating that the bruise on Makaio's foot had not been intentionally inflicted and child protective services were not necessary.

On April 11, 2001, appellant contacted the ALPD again to report his concern that Makaio was being abused. Two days later, Makaio's guardian ad litem (GAL) also contacted the ALPD after a visit to the Radke home. The GAL reported that Makaio had some old and some new bruises on his face. The GAL reported that the explanation given to her by Radke was that the bruising occurred the night before while Makaio had been in the bathtub.

Social worker Lisa Frank visited Makaio at Radke's home at approximately 11:00 a.m. on April 20, 2001. Present at the home during the visit were Radke and her daughter, Baker and her child, and Makaio. Frank was aware of the prior reports of abuse, and during her visit, she was able to observe a small light green bruise on Makaio's left temple, a similar bruise on his rib cage, and a third small light green bruise on his backbone just above his diaper. Frank also observed that Makaio was lethargic and had a runny nose. The meeting concluded at about 11:30 a.m., and no further precautions were taken.

Later that day, Radke and Baker left the house at about 1:00 in the afternoon, and did not return until about 1:00 a.m. The two women left their children at the house with Gutierrez. The next morning, Radke brought Makaio to the Albert Lea Medical Center where he was pronounced dead at 10:19 a.m. Makaio's body had bruises on his face, back, legs, arms, lower extremities and head. He had a small abrasion and bruise on his occipital area and a small bruise that was approximately 1 cm on his back that appeared older than the other bruises. Makaio also had multiple fractures of his ribs and sub subcutaneous emphysema, and had a laceration on the edge of his rectum raising suspicions of abuse. An autopsy conducted by the Ramsey County Medical Examiner determined that Makaio had died 10 to 12 hours before he was confirmed dead at the hospital. Makaio's sister was also examined for abuse, and the examination revealed that she had bruises on her buttocks, scratches on her neck and hair loss. Gutierrez was subsequently convicted of two counts of first-degree murder by criminal sexual conduct and child abuse, and one count of second-degree murder.

Appellant was appointed Trustee for the Next of Kin of Makaio on December 18, 2002, by Order of the District Court. Shortly thereafter, appellant commenced this wrongful death negligence action against Freeborn County, Lisa Frank, and Tammy Ressler, individually and in her capacity as an employee of Freeborn County (respondents). Peggy Radke and Gutierrez were also named in the suit.

Pursuant to Minn. R. Civ. P. 12.02(e), respondents Freeborn County, Frank, and Ressler moved to dismiss for failure to state a claim for which relief can be granted. On April 3, 2003, appellant served

requests for production of documents and things, to which respondents responded with a motion for a protective order asking that they should not be required to produce the discovery until after the court ruled on the motion to dismiss. Appellant subsequently filed a motion to compel discovery contending that the discovery was necessary to evaluate the motion to dismiss.

On May 21, 2003, the district court granted respondents' motion for a protective order, staying discovery until after the court ruled on the motion to dismiss. Two weeks later, the district court granted the motion to dismiss. This appeal followed.

## ISSUES

I.  Did the district court err by granting respondent's motion to dismiss for failure to state a claim upon which relief can be granted?

II. Did the district court abuse its discretion when it granted respondent's protective order staying the production of discovery until the motion to dismiss was heard?

## ANALYSIS

### I.

In reviewing cases that were dismissed for failure to state a claim on which relief can be granted, the only question before the reviewing court is whether the complaint sets forth a legally sufficient claim for relief. *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn.1997). An appellate court reviews the claim's legal sufficiency de novo. *Pullar v. Indep. Sch. Dist. No. 701, Hibbing*, 582 N.W.2d 273, 275–76 (Minn.App.1998). The facts in the complaint are accepted as true, and the plaintiff has the benefit of all favorable and reasonable inferences. *Id.*

The Child Abuse Reporting Act (CARA) was enacted to "protect children whose health or welfare may be jeopardized through physical abuse, neglect or sexual abuse." Minn.Stat. 626.556, subd. 1 (2002). This statute requires local welfare agencies to follow up reports of alleged sexual abuse immediately with an assessment and an offer of protective social services to prevent further abuse. Minn.Stat. 626.556, subd. 10(a) (2002). A person who is mandated by CARA to report abuse, and fails to report the abuse, is guilty of a misdemeanor. Minn.Stat. 626.556, subd. 6(a) (2002). The statute does not create civil liability for the failure to report suspected abuse. *See Valtakis v. Putnam*, 504 N.W.2d 264, 266 (Minn.App.1993) (finding no civil cause of action under CARA for failure to report suspected child abuse because the statute did not mention a civil cause of action for failure to report, nor did the language of the statute imply a civil cause of action).

Appellant's complaint is not based specifically on respondent's failure to follow CARA, rather appellant contends that respondents owed a "special duty" to Makaio that was created by their conduct and assumption of the duty to act reasonably. In determining whether a "special duty" exists, the court in *Cracraft* set forth the following four factors to be considered: (1) the municipality's actual knowledge of the dangerous situation; (2) the plaintiff's reasonable reliance on the specific representations of the municipality; (3) a statutory duty for municipal protection of a particular class; and (4) the municipality must use due care not to increase the risk of harm. *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 806–07 (Minn.1979). While all four factors should be considered, all four need not necessarily be met for a special duty to exist. *Andrade v. Ellefson*, 391 N.W.2d 836, 841 (Minn.1986).

Appellant's argument here is based primarily on *Andrade*. In that case, two minor children sustained serious injuries while attending a daycare facility operated by the defendants and inspected and supervised by Anoka County in assisting the Commissioner of Human Services in its licensing responsibility. *Andrade*, 391 N.W.2d at 837. In determining whether a special relationship existed between the county investigating daycare facilities for licensure and the small children who attended the facility, giving rise to a negligence claim, the court stated that it was the third *Cracraft* factor that was decisive in the case. *Id.* at 842. The court recognized that the licensing requirements were adopted to "ensure a safe environment for children" in accordance with Minn.Stat. 245.802, subd. (1984). *Id.* Thus, the court held that a special relationship existed because the commissioner had promulgated detailed rules governing the needs and well being of the children in day care facilities. *Id.*

Respondent contends that *Hoppe v. Kandiyohi County*, 543 N.W.2d 635 (Minn. 1996), decided ten years after *Andrade*, is controlling in this case. In *Hoppe*, a bank employee had converted a nursing home patient's funds after being granted power of attorney. The guardian of the patient brought action against the county on behalf of the patient based on the alleged negligent failure of the county social services employees to timely investigate or report the actions as required by the Vulnerable Adults Reporting Act (VARA).[1] *Hoppe*, 543 N.W.2d at 637. Both parties moved for summary judgment, and the district court granted the county's motion to dismiss. The Court of Appeals reversed, acknowledging that there was no

express provision for imposing liability under the circumstances of record, but holding that under *Andrade*, a special relationship existed between the county and the vulnerable adult "giving rise[e] to a tort duty of care owed by the county to Hoppe." *Hoppe v. Kandiyohi County*, No. C0–94–1627, 1995 WL 70167 (Minn.App. Feb 21, 1995).

In reversing the Court of Appeal's decision that a "special relationship" existed, the Supreme Court began by distinguishing *Andrade* stating that the licensing procedure at issue in *Andrade* entailed a detailed inspection and evaluation of an applicant facility, and the licensing requirements were adopted to "ensure a safe environment for the children." *Hoppe*, 543 N.W.2d at 638 (quoting Minn. Stat. 245.802, subd. 4 (1984)). The court stated, "unlike in *Andrade*, the legislature has spoken to the question of penalties or liability to be imposed with regard to the VARA, and has not explicitly or by implication identified a civil cause of action for alleged negligent investigation or intervention." *Id.* The court then referenced *Bruegger v. Faribault County Sheriff's Dep't*, where it held that no cause of action existed in *Bruegger* because there was no common law cause of action for failure to inform individuals of potential rights of recovery under the Crime Victims Reparations Act, and because the legislature had not expressly or impliedly created a statutory cause of action. *Id.* (citing *Bruegger v. Faribault County Sheriff's Dep't.*, 497 N.W.2d 260 (Minn. 1993)). Based on its holding in *Bruegger*, the court concluded that VARA does not confer a common law cause of action for the failure to conduct timely investigations

1. Similar in scope to CARA, VARA details the responsibilities relating to the reporting of alleged maltreatment of vulnerable adults and contains language that is nearly identical with CARA. *Cf.* Minn.Stat. § 626.557 *with* Minn. Stat. § 626.556.

on reports of abuse to vulnerable adults. *Id.* at 638.

The law is not clear cut, but we are persuaded by respondent's argument that CARA, like VARA, does not contain a legislatively-established civil cause of action. Also, although the precise question of municipal immunity did not come up in this case because it was a rule–12 motion, it appears the Minnesota Supreme Court in *Andrade* looked at the daycare checklist as ministerial, but in *Hoppe* found the decision-making to be discretionary. The decision-making here by the county and its agents was decidedly discretionary thinking. We do not rest our decision on this difference, as this difference was not set out by the supreme court. We simply point it out to reconcile *Andrade* and *Hoppe*. The supreme court in *Hoppe* distinguished *Andrade* and concluded that the legislature did not identify a cause of action under VARA for alleged negligent investigation or intervention. *Hoppe,* 543 N.W.2d at 638. We conclude the same reasoning applies here. The legislature has not expressly or impliedly created a cause of action under CARA. We are reluctant to supply what the legislature appeared to intentionally omit.

We are not unsympathetic toward appellant. At times, Makaio's mother's explanation for each new set of bruises on his body "boggles the mind;" e.g., her explanation that Makaio's leg injuries were maybe caused by "hoof and mouth disease." Her continuous line of explanations and rationalizations should not have been considered credible by anyone with minimal training in child abuse. We understand appellant's frustration and his firm belief that if the county and its agents had done their job properly, Makaio would not have remained accessible to the predatory Gutierrez and might well be alive today. Having said that, we are persuaded by the supreme court's reasoning in *Hoppe* that no civil cause of action was created under CARA against municipal welfare agencies.

The district court did not err by granting respondent's motion to dismiss for failing to state a claim on which relief can be granted.

### II.

Appellant argues that the district court abused its discretion when it granted respondent's protective order staying the production of discovery until the motion to dismiss was heard. Rule 26.03 of the Minnesota Rules of Civil Procedure gives the trial court broad discretion to fashion protective orders and to order discovery only on specified terms and conditions. *Erickson v. MacArthur,* 414 N.W.2d 406, 409 (Minn.1987).

Here, the issue of whether respondents owed a special duty to Makaio was a question of law. Respondents argue that any facts that could be obtained in appellant's discovery would be irrelevant to the legal issue and that it would have been an undue burden on them to expend the time necessary to answer appellant's discovery. Appellant correctly asserts that good cause to issue a protective order is not established by merely showing that discovery would be time consuming and expensive to a party. We note it would not have been improper for the district court to allow discovery before ruling on the rule–12 motion. Having said that, given a district court's wide discretion in fashioning protective orders and the timing schedules for discovery, we cannot say that the district court abused its discretion by relying on the facts in the complaint when addressing a rule–12 motion to dismiss, and staying further discovery until the rule–12 motion to dismiss was decided.

## DECISION

The legislature did not expressly or impliedly create a civil cause of action under the Child Abuse Reporting Act. The district court did not err by granting respondent's motion to dismiss for failing to state a claim on which relief can be granted.

Affirmed.