Ted BIGOS, d/b/a The Observatory Apartments, Respondent,

v.

Joel KLUENDER, et al., Appellants,

West Bend Mutual Insurance Company, Respondent,

Lori Tejeda, Respondent, Intervenor,

Joan Azzam, Respondent,

Scott Church, et al., Respondents, Intervenors,

Dan Windorf, et al., John Titus, et al., Brian Dickerhoof, John Doe, et al., Defendants.

Nos. CX–99–1928, CX–99–1931, C7–99–2065.

Court of Appeals of Minnesota.

June 6, 2000.

Review Denied July 25, 2000.

L.T. Merrigan, Hopkins, for respondent Ted Bigos.

Allan E. Wallace, Brown & Carlson, P.A., Minneapolis, for appellants.

Lyndon P. Nelson, Andrea M. Nelson, Nelson & Associates, West St. Paul, for respondent West Bend Mutual.

Gary Liebmann, Burnsville, for respondent Lori Tejeda.

Thomas J. White, Minnetonka, for respondent Joan Azzam.

Steven L. Theesfeld, David J. Yarosh, Yost & Baill, L.L.P., Minneapolis, for respondents Scott Church, et al.

Dan Windorf, et al., pro se defendant.

John Titus, et al., pro se defendant.

Bryan Dickerhoof, Burnsville, pro se defendant.

Considered and decided by AMUNDSON, Presiding Judge, RANDALL, Judge, and HUSPENI,[1] Judge.

## OPINION

RANDALL, Judge

Appellants argue that the district court erred when it granted summary judgment for respondents, ruling that appellants' negligence per se was a direct cause of respondents' damages and that respondent landlord did not owe tenants, including appellants, a duty of care. Respondent landlord's insurer argues that the district court erred when it dismissed its subrogation claim against appellants. We affirm in part, reverse in part, and remand.

## FACTS

In July 1996, appellants Joel and Jennifer Kluender signed a lease and house rules to live in the Observatory Apartments. The apartment complex was owned by respondent Ted Bigos Investments, Inc. In August 1996, the Kluenders moved into an apartment on the second floor. On their deck, the Kluenders kept a kettle-type full-size grill, a bag of charcoal, a can of lighter fluid, and a cardboard box containing spent ash and garbage.

It was Joel Kluender's practice to cook on the grill, allow the coals to burn to ash, and put the ash into the cardboard box the

---

1. Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. Art. VI, § 10.

next time he used the grill. In April 1997, while emptying ash into the box, some of the ash fell onto the patio below the Kluenders' deck. The tenant in the unit below, Bryan Dickerhoof, complained to an apartment manager, Joan Azzam, that the Kluenders had a grill on their deck and that ash fell onto his patio. By letter dated April 14, 1997, Azzam informed the Kluenders of Dickerhoof's complaint, explained the illegality of keeping such grilling items on their apartment deck, and instructed the Kluenders to remove the grill. Azzam did not personally deliver the letter to the Kluenders, but left it for a caretaker to deliver. The Kluenders claim they did not receive the letter.

On April 29, 1997, a fire occurred on the Kluenders' apartment deck. Dave Crosbie, an inspector for the Burnsville Fire Department, was at the scene of the fire and determined that the most likely cause of the fire was spontaneous combustion of unconsumed charcoal in the cardboard box. Crosbie also stated the fire could have been started by a hot coal that had been put into the cardboard box, but concluded that this was unlikely because the Kluender's stated that at least ten days had passed since the grill had last been used. According to Crosbie, the fire started on the southwest corner of the Kluenders' balcony where the cardboard ash box was kept.

Richard Kleis of the State Fire Marshall's Office determined that the cause of the fire was spontaneous combustion of the bag of charcoal on the deck. Kleis was not at the scene of the fire, but reviewed the aftermath and interviewed and discussed the incident with Burnsville fire investigators. It was Kleis's conclusion that the origin of the fire was the northeast wall area of the Kluenders' balcony where the bag of charcoal was located.

## ISSUES

1. Did the district court err when it ruled the Kluenders were negligent per se?

2. Did the district court err when it ruled that landlord did not owe tenants, including appellants, a legal duty to warn or protect against appellants' violation of the municipal fire code?

3. Did the district court err in ruling the landlord's insurer may not subrogate against appellants?

## ANALYSIS

On appeal from summary judgment, this court asks (1) whether there are any genuine issues of material fact and (2) whether the lower court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). This court "must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). Summary judgment shall be granted only where there is no genuine issue of material fact and either party is entitled to judgment as a matter of law. *Id.*

### I.

The Kluenders argue that the district court erred when it ruled that they were "negligent per se" because the cardboard ash box constituted "other material" under the city ordinance and that the Kluenders violated the ordinance by maintaining the ash box on their deck. The Kluenders point out that technically the city ordinance does not prohibit the storage of spent ash on apartment decks and that there exists the possibility of spent ash as a source of the fire. The Kluenders contend that a genuine issue of material fact exists regarding causation that precludes summary judgment. We agree. Regardless of whether the city ordinance does or does not specifically prohibit any of appellants' materials that could be possible sources of the fire, the issue of what caused the fire still exists. Differing reasonable explanations appear on the record.

In determining whether a violation of a statute or ordinance constitutes negligence per se, plaintiff must demonstrate that: (1) the breach of the statute or ordinance harmed persons intended to be protected by the statute or ordinance, and (2) the harm suffered is the type of harm the legislature intended to prevent. *Pacific Indemnity Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 558–59 (Minn.1977).

The Burnsville fire code provides:

No person shall construct, erect, install or use any incinerator or barbecue nor kindle or maintain any open flame, *charcoal or other material* on any balcony or patio which is attached to, or within fifteen (15') feet of, any townhouse, condominium or apartment building in which there are two (2) or more separate living units on more than one level unless the separate living units each has its own private means of ingress or egress or unless the entire building and patio or balcony is constructed of noncombustible materials such as concrete or masonry.

Burnsville, Minn., Fire Prevention Code § 5–1–1(I) (1999) (emphasis added).

Although it is undisputed that appellants stored a grill, a bag of charcoal, lighter fluid, and a cardboard ash box on their apartment deck, the cause of the fire is disputed. According to Crosbie, the most likely cause of the fire was the spontaneous combustion of unconsumed charcoal in the cardboard ash box. But in his report, Crosbie stated that he did not find any charcoal in the cardboard ash box or in the immediate vicinity of the ash box. Kleis, on the other hand, opined that the fire was caused by the spontaneous combustion of charcoal in the bag kept on the balcony by the Kluenders.

As the Kluenders argue, the Burnsville ordinance does not prohibit the storage of spent ash on the deck of a multi-unit apartment complex. If the trier of fact were to find that the ash box did not contain any unconsumed charcoal, it could reasonably conclude that the Kluenders were not negligent per se because the fire was not proximately caused by a violation of the Burnsville city ordinance. Although we do not pass on the strength of the Kluenders' claim, viewing the evidence in the light most favorable to the Kluenders as we must, we conclude that the issue of causation presents a genuine issue of material fact that precludes summary judgment on the issue of whether the Kluenders were negligent per se.

**II.**

The Kluenders argue that the landlord, respondent Ted Bigos, owed and assumed a duty to the apartment complex tenants, including themselves, to warn them (of their own alleged negligence) to remove grilling materials from their deck.

Whether a legal duty exists is generally a question of law for this court to determine de novo. *Johnson v. State*, 553 N.W.2d 40, 49 (Minn.1996). Generally, a person has no duty to protect another, "even if he realizes or should realize that action on his part is necessary." *Donaldson v. Young Women's Christian Ass'n*, 539 N.W.2d 789, 792 (Minn.1995) (citation omitted). In Minnesota,

there is no common-law duty imposed on any individual * * * to inspect and correct the fire code violations of a third person unless there is a 'special relation' between the parties.

*Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 804 (Minn.1979). Thus, absent some special relationship between the Kluenders and their landlord, the landlord owed no duty to the Kluenders to inspect and correct any alleged fire code violations by the Kluenders.

A special relationship creating a duty on the part of a defendant to protect often involves some degree of dependence. *H.B. by Clark v. Whittemore*, 552 N.W.2d 705, 708 (Minn.1996). A special relationship giving rise to a duty to protect is generally found only on the part of

common carriers, innkeepers, possessors of land who hold it open to the public, and persons who have custody of another person under circumstances in which that other person is deprived of normal opportunities of self-protection.

*Donaldson*, 539 N.W.2d at 792 (citation omitted). In such relationships, the plaintiff is, in some respect, particularly vulnerable and dependent on the defendant who holds considerable power over the plaintiff's welfare. *Id.* A landlord-tenant relationship alone does not create a duty to protect. *Nickelson v. Mall of Am. Co.*, 593 N.W.2d 723, 726 (Minn.App.1999).

The Kluenders contend that the landlord had a duty to warn them that they could not store grilling material on their deck because it violated the municipal fire code. In essence, the Kluenders claim that the landlord should have protected them from themselves. First, courts have traditionally been reluctant to impose liability on others for self-inflicted harm. *Donaldson*, 539 N.W.2d at 792. Generally, a legal duty to protect another against self-inflicted harm is recognized where an institution has physical custody and control over the person to be protected, such as a hospital or jail. *Id.* That is not the case here. The harm here was self-inflicted by the Kluenders. The relationship between the Kluenders and their landlord was not custodial or of a caretaking nature. We conclude the landlord did not have a duty to protect the Kluenders from themselves. Further, that the landlord had actual knowledge of the existence of grilling material on the Kluenders' deck does not change our analysis. "[S]uperior knowledge of a dangerous condition by itself, in the absence of a duty to provide protection, is insufficient to establish liability in negligence." *Harper v. Herman*, 499 N.W.2d 472, 475 (Minn.1993). Because the landlord had no special duty to protect the Kluenders, the landlord's knowledge of the grilling material, without more, does not create liability.

The Kluenders argue that a special relationship existed because the landlord had the ability to control the Kluenders through its lease and the house rules. The Kluenders contend that the landlord accepted entrustment of the situation when it drafted the letter informing the Kluenders of Dickerhoof's complaint, namely, the illegality of keeping grilling material on the their deck, and instructing them to remove the grilling material from the deck. Ironically, while the landlord insists that it sent this letter to the Kluenders, the Kluenders maintain they never received it! Viewing the facts in the light most favorable to the Kluenders, we assume the Kluenders did not receive the letter. Because the Kluenders claim they never received the letter, it is difficult for the Kluenders to argue that as a matter of law they "relied" on a representation by the landlord that it would protect them from fire code violations.

A similar situation was addressed in *Whittemore*. In that case, a trailer park manager did not take action after children in the trailer park told her another tenant was sexually abusing them. *Whittemore*, 552 N.W.2d at 707. Despite having actual knowledge that the alleged perpetrator had pleaded guilty to molesting children previously, the manager did nothing other than to tell the complaining children to inform their parents of the alleged sexual abuse. *Id.* The court concluded that in light of the manager's statement, the manager did not accept entrustment of the children. *Id.* at 708–09. The court also noted that the manager did not exercise control or custody over the children. *Id.* at 709. The court held that because there was no special relationship between the manager and the children, the manager did not have a duty to protect the children or warn their parents. *Id.* at 709–10.

In the present case, the Kluenders have failed to establish that a special relationship existed between them and their landlord. Because the Kluenders have failed to establish the existence of a special rela-

tionship, we conclude that despite the landlord's knowledge that the Kluenders had grilling material on their deck in violation of the municipal fire code, the landlord had no affirmative duty to warn the Kluenders to correct the fire code violation.

■ We reject the Kluenders argument that the presence of the grilling material was a dangerous condition on the land for which the landlord had a duty to warn. The cases relied on by the Kluenders are readily distinguishable by the fact that they involved the landlord's duty to exercise reasonable care in maintaining the premises in such a manner that "does not expose the visitor to an unreasonable risk of harm." *Pietila v. Congdon*, 362 N.W.2d 328, 332–33 (Minn.1985). Here, the Kluenders' deck was not a common area over which the landlord had a duty to exercise reasonable care in maintaining. We conclude that *Pietila* is inapposite to the present case.

■ We are not persuaded by the Kluenders' argument that the landlord exercised· sufficient control over the Kluenders' deck to impose a duty to exercise reasonable care on their behalf. To support their position, the Kluenders rely on *Lillemoen v. Gregorich*, 256 N.W.2d 628 (Minn.1977). In *Lillemoen*, two tenants brought suit against their landlord for injuries one of the tenants sustained after falling down an icy exterior stairway. *Id.* at 629–30. The tenants argued that the landlord owed a duty to keep the stairs free of ice. *Id.* at 631. The court concluded that "common area" cases did not apply because the stairway led only to the tenants' apartment. *Id.* The court applied section 360 of the Restatement of Torts (Second), which provides:

"A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee * * * for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe."

*Id.* at 631–32. Because the issue of control over the stairway was disputed, the court held that summary judgment was inappropriate. *Id.* at 632.

In *Lillemoen*, liability turned on who had the responsibility for maintaining the staircase, the landlord or the tenant. Unlike the staircase in *Lillemoen*, the deck was part of the leased premises, not an appurtenance to the leased premises. The Kluenders failed to establish that the landlord was responsible for policing what objects were allowed on their deck. We conclude that the decision in *Lillemoen* is not controlling.

## III.

■ Pursuant to its notice of review, the landlord's insurer, United Fire & Casualty Company, argues that it is entitled to recover the entire loss it has paid to the landlord because it was necessitated by the Kluenders' alleged negligence. We disagree.

■ An insurance company cannot subrogate against its own insured under general principles of insurance law. *United States Fire Ins. Co. v. Ammala*, 334 N.W.2d 631, 634 (Minn.1983). This general principle has been extended to prohibit an insurer from subrogating against a tenant of its insured who negligently starts a fire, unless an express agreement was entered into between the insured and its tenant requiring the tenant to carry its own fire insurance. *See United Fire & Cas. Co. v. Bruggeman*, 505 N.W.2d 87, 90 (Minn.App.1993) (holding landlord's insurer may not subrogate against landlord's tenant who negligently causes fire where no express agreement between landlord and tenant covering provision of fire insurance), *review denied* (Minn. Oct. 19, 1993). A landlord and tenant are co-insureds be-

cause the insurance premiums are indirectly paid by the tenant through rent, and if each tenant were responsible for damages caused by the tenant's negligence in a fire, the same property would be insured more than once. *Id.* at 89. This rule "applies to any landlord/tenant situation where there is no express agreement covering the provision of fire insurance for the building." *Blohm v. Johnson,* 523 N.W.2d 14, 16 (Minn.App.1994) (citation omitted).

United Fire argues that the Minnesota Supreme Court's decision in *Osborne v. Chapman,* 574 N.W.2d 64 (Minn.1998), limits and implicitly overrules the decision in *Bruggeman.* We disagree. The decision in *Osborne* did not involve a subrogation claim brought by an insurer, but rather was *a direct claim* by landlords against a tenant. *Id.* at 66. Because the case did not involve subrogation, the supreme court determined *Bruggeman* was inapplicable. *Id.* at 67. The court held that liability will not be affected by the plaintiff's possession of insurance coverage. *Id.*

This case is a subrogation claim. United Fire is trying to recover from the Kluenders payments already made to the landlord. Because there was no express agreement between the Kluenders and the landlord that the Kluenders were obligated to retain their own fire insurance, United Fire's subrogation action against the Kluenders fails.

## DECISION

The district court improperly granted summary judgment on the issue of whether the Kluenders were negligent per se. A genuine issue of material fact exists on the issue of what caused the fire.

No special relationship existed between the landlord and the Kluenders. Thus, the landlord owed no special duty to the Kluenders to inspect and correct the Kluenders' fire code violations. United Fire cannot subrogate against the Kluenders, the tenants, for fire insurance monies paid to the landlord. The lease agreement did not require the Kluenders to carry their own fire insurance.

**Affirmed in part, reversed in part, and remanded.**