**RAM MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Rusty ROHDE d/b/a Studio 71 Salon, Respondent.**

No. A10–2146.

Court of Appeals of Minnesota.

Aug. 15, 2011.

Review Granted Nov. 15, 2011.

Kirby Dahl, John J. Neal, Willenbring, Dahl, Wocken & Zimmermann, PLLC, Cold Spring, MN, for appellant.

Matthew W. Moehrle, Rajkowski Hansmeier Ltd., St. Cloud, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge; SCHELLHAS, Judge; and WILLIS, Judge.

## OPINION

WILLIS, Judge.*

Appellant argues that the district court erred by granting respondent's motion for summary judgment. Because the district court properly concluded that appellant cannot maintain a subrogation action against respondent, we affirm.

## FACTS

JD Property Management owns a business property that consists of three separate units. Respondent Rusty Rohde rented one of the units to operate Studio 71 Salon. Appellant RAM Mutual Insurance Company insured the property.

On February 4, 2008, a water line to a pedicure chair at Studio 71 burst, causing damage to the property. RAM paid JD Property Management $17,509.38 for the damage. Because the water line had been installed by Rohde, allegedly without JD

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

Property's knowledge, RAM filed a subrogation action against Rohde, asserting breach of contract, negligence, and promissory estoppel. As the subrogee of JD Property, RAM sought recovery of the $17,509.38 insurance payment.

Rohde moved for summary judgment. The district court granted Rohde's motion, and this appeal follows.

## ISSUE

Did the district court err by granting respondent's motion for summary judgment?

## ANALYSIS

The district court concluded that RAM's subrogation claim against Rohde was barred under *United Fire & Cas. Co. v. Bruggeman*, 505 N.W.2d 87 (Minn.App. 1993), *review denied* (Minn. Oct. 19, 1993). RAM argues that this was error.

"A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). Appellate courts review de novo whether a genuine issue of material fact exists and whether the district court erred in its application of the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn.2002). In addition, this court "must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio*, 504 N.W.2d at 761.

In *Bruggeman*, a landlord's insurer brought a subrogation action against tenants occupying the landlord's property, alleging negligence in causing fire damage to the building. 505 N.W.2d at 88. There was no written lease or contract between the landlord and the tenants, and there was no independent agreement regarding insurance coverage. *Id.* Nonetheless, the landlord had obtained a first-party, fire-insurance policy, which provided coverage for fire damage to the property. *Id.* This court affirmed the district court's determination that in the subrogation context the tenants were coinsureds under the landlord's first-party insurance policy and, therefore, could not be sued by the landlord's insurer. *Id.* at 89–90; *see Bigos v. Kluender*, 611 N.W.2d 816, 822 (Minn.App. 2000) ("An insurance company cannot subrogate against its own insured under general principles of insurance law."), *review denied* (Minn. July 25, 2000).

This court reasoned that the landlord and tenants were coinsureds because each had an insurable interest in the property—the landlord had a fee interest and the tenants had a possessory interest. *Bruggeman*, 505 N.W.2d at 89. And the court noted that the party with the fee interest—the landlord—had purchased fire insurance and that the premium paid had to be considered in establishing the rental rate. *Id.* The tenants, therefore, actually paid the premium as part of their rent. *Id.* The court further stated that "[t]his sharing of proprietary interests and the expenses associated with protecting them gives rise to the co-insured relationship." *Id.* Moreover, the court reasoned that it would have been redundant and a waste of resources for both a landlord and tenants to obtain first-party coverage for property damage to the rented premises. *See id.* ("If ... each tenant is responsible for all damages arising from its negligence in causing a fire and if each tenant was therefore responsible for its own fire insurance, the same property would be insured many times over. While this may provide insurance companies a welcome windfall, it would be contrary to economic logic and common sense."). Therefore, this court

concluded that, because the landlord and tenants were coinsureds, the subrogation action could not be maintained. *Id.* at 90.

Here, there was no express agreement between JD Property and Rohde for provision of first-party insurance coverage on the building. The lease agreement does, however, address first-party insurance coverage for damage to personal property and third-party liability coverage. The lease provides:

**Insurance**

25. The Tenant is hereby advised and understands that the personal property of the Tenant is not insured by the Landlord for either damage or loss, and the Landlord assumes no liability for any such loss. The Tenant is advised that, if insurance coverage is desired by the Tenant, the Tenant should inquire of Tenant's insurance agent regarding a Tenant's Policy of Insurance.

26. The Tenant is responsible for insuring the Premises for liability insurance for the benefit of the Tenant and the Landlord.

27. The Tenant will provide proof of such insurance to the Landlord upon the issuance or renewal of such insurance.

Rohde obtained the insurance coverage described in the lease. His policy provided the requisite third-party liability coverage, as well as property-damage coverage for both the building and its contents, but only in excess of any such coverage purchased by JD Property on the same premises. Therefore, this case is similar to *Blohm v. Johnson,* 523 N.W.2d 14, 16 (Minn.App.1994), in which the lease was silent regarding the need for first-party, property-damage coverage but provisions similar to those here existed in the lease requiring the tenant to carry liability insurance and other coverage relating to the tenant's operations. In *Blohm,* this court affirmed the district court's dismissal of the insurer's subrogation claim, finding that *Bruggeman* applied because the lease did not specifically state who was responsible for carrying fire insurance. 523 N.W.2d at 16. Here, because there was no express agreement between JD Property and Rohde regarding first-party insurance coverage for the building, the parties stand as coinsureds, and RAM's subrogation action cannot be maintained.

RAM relies on *Osborne v. Chapman,* 574 N.W.2d 64 (Minn.1998), to support its assertion that the district court erred by granting Rohde's motion for summary judgment. But *Osborne* is distinguishable. There, the court did not address repair costs to rented premises that had been physically damaged but rather a claim for lost rental income. 574 N.W.2d at 67. And a landlord and tenant do not share an insurable interest in lost future rents as they do with regard to the "respective real property interests of landlords and tenants." *Id.* Therefore, because lost-rental-income coverage "plainly exists for the benefit of the landlord, not the tenant, for it is the landlord whose income from the rental property is cut off when a casualty renders the premises uninhabitable," the supreme court found that *Bruggeman* was inapposite. *Id.* Here, *Bruggeman* and its progeny apply because this case involves physical damage to real property, a loss for which both the landlord and tenant have an insurable interest.

RAM argues that courts have not applied *Bruggeman* and its progeny to a nonfire-related loss. But RAM offers no explanation for why insurance-law principles should be applied differently in cases involving fire damage to a building from cases involving damage caused by a water leak. Furthermore, both perils are covered by the first-party, property-damage insurance policy that JD Property obtained from RAM. *Bruggeman* is not inapplicable simply because the damage in this case was caused by water rather than fire.

RAM next argues that there is an express agreement in the lease requiring JD Property to obtain fire-insurance coverage but not other forms of first-party, property-damage coverage, so *Bruggeman* is inapplicable. The lease provides:

**Tenant's Repairs and Alterations**

35. The Tenant covenants with the Landlord to occupy the Premises in a tenant-like manner and not to permit waste. The Tenant will at all times and at its sole expense, subject to the Landlord's repair, maintain and keep the Premises, reasonable wear and tear, damage by fire, lightning, tempest, structural repairs, and repairs necessitated from hazards and perils against which the Landlord is required to insure excepted.

RAM's reasoning is flawed for two reasons: First, the language does not identify fire damage as a peril "against which Landlord is required to insure." Rather, that phrase and the phrase "damage by fire" are two separate items on a list of events that do not trigger a duty of repair by the tenant. And one item on the list of exceptions—"reasonable wear and tear"—is not a cost that the landlord can insure against. Second, caselaw indicates that even if the lease did contain an express requirement that the landlord carry first-party property insurance, the analysis would not change. *See Bigos,* 611 N.W.2d at 822 ("An insurance company cannot subrogate against its own insured under general principles of insurance law. This general principle has been extended to prohibit an insurer from subrogating against a tenant of its insured who negligently starts a fire, unless an express agreement was entered into between the insured and its tenant requiring the tenant to carry its own fire insurance." (citation omitted)). Whether the lease is silent or there is an express requirement that the landlord carry first-party property insurance, if the landlord ultimately provides that insurance, the reasoning of *Bruggeman* applies. Therefore, even assuming that there were an express requirement that JD Property carry first-party property insurance, RAM would nevertheless be prevented from maintaining a subrogation action against Rohde.

Lastly, RAM expends significant effort arguing that Rohde's actions violated the lease and were negligent. But those issues are irrelevant. The damage to the property was not caused by installing a water line without the permission of the landlord; rather, the damage was the result of the apparently negligent installation of the water line. And even if a coinsured tenant negligently causes damage, a landlord's insurer may not bring a subrogation action against the tenant. *See Blohm,* 523 N.W.2d at 15 ("*Bruggeman* held that for purposes of subrogation, in the absence of an express agreement to the contrary, a tenant is a coinsured of the landlord, and the landlord's insurer may not bring an action against a tenant to recover amounts paid to a landlord for fire damage *caused by the tenant's negligence.*" (emphasis added)). Thus, even assuming that Rohde violated the lease and negligently caused the water damage, RAM's action still cannot be maintained.

**DECISION**

The principle set forth in *Bruggeman* and its progeny applies to water damage as well as fire damage. Therefore, RAM cannot maintain a subrogation action against Rohde, and the district court did not err by granting Rohde's motion for summary judgment.

**Affirmed.**